## 37880. PAXTON v. THE STATE.

ORDER OF COURT.

Upon consideration of the application for certiorari filed to review the judgment of the Court of Appeals in this case, it is ordered that the writ be hereby denied.

*Jordan, C. J., Marshall, Clarke, Smith and Gregory, JJ., concur. Hill, P. J., dissents.*

ORDERED SEPTEMBER 8, 1981.

*Harold A. Horne, Jr., Clifton O. Bailey,* for appellant.
*Robert E. Wilson, District Attorney, Susan Brooks, Ann Poe Mitchell, Assistant District Attorneys,* for appellee.

HILL, Presiding Justice, dissenting.

As a result of their investigation of the death of Dora Butler, the police asked the defendant, a juvenile 15 years of age, and his mother

to come to the police station for "elimination" fingerprints. Defendant and his mother did so voluntarily. They returned home, but because the fingerprints were not "clear", police again asked defendant and his mother to come to the police station for a second set of prints. Defendant was not under arrest, and he and his mother again went to the police station voluntarily about 9:00 p.m., August 8, 1977. Although the police were aware of a possible "match" of defendant's fingerprints, he and his mother were not advised of this fact. Examination of the second set of fingerprints produced a positive match; the investigators were advised of this and defendant was arrested immediately.[1] Defendant and his mother were informed that he was charged with murder, rape and burglary, and both were advised of his Miranda rights. They were given two identical forms entitled Advice of Rights to Juvenile, which contained the Miranda rights in simplified form, a waiver of such rights and a waiver of an attorney's presence during questioning. Defendant read and explained the form to his mother, who could not read, and both of them signed the forms. Investigators Steine and Walker then questioned the defendant in his mother's presence. About 12:30 a.m. defendant made a statement implicating himself and two other boys in the alleged offenses. This statement was reduced to writing; defendant read the written statement, and both he and his mother signed it.

Sometime between 1:00 and 2:00 a.m. the defendant's mother voluntarily went home, as she had to work later that morning. Prior to her departure, she was advised that she could remain and be present during any further questioning of her son. Lt. Ledbetter and Sgt. Shockley then decided to question defendant, and shortly after the mother's departure went into the conference room where defendant was sitting and questioned him further. This room had been designated by the juvenile court judge as one of two areas where juveniles could be questioned. Ledbetter and Shockley talked to the defendant about 15 or 20 minutes and he told them that he had committed the offenses with which he was charged. Lt Ledbetter and Sgt. Shockley left the room and Ledbetter told Investigator Steine that defendant was now ready to make another statement, or confess.[2] Steine returned to the conference room at about 3:35

---

[1] The police made a telephone call to an assistant district attorney at approximately 9:00 p.m., after the match of defendant's fingerprints. The assistant district attorney told the police that the Superior Court of DeKalb County would take jurisdiction over the case.

[2] Somewhere around 3:00 or 3:30 a.m. the juvenile court judge was called by telephone and he instructed Sgt. Vivian Underwood of the Youth Squad to write

a.m. and started taking a second written statement. No one else was present initially during the questioning; when Steine was approximately half-way through writing the statement, Sgt. Underwood of the Youth Squad entered the conference room and remained until the statement was completed at 4:27 a.m. Thereafter, defendant was taken across the street to the Juvenile Detention Center.

Code Ann. § 24A-1402 (a) provides in pertinent part as follows: "A person taking a child into custody, with all reasonable speed *and without first taking the child elsewhere,* shall: (1) forthwith release without bond the child to his parents . . . ; or (2) forthwith deliver the child to a medical facility if the child is believed to suffer from a serious physical condition or illness . . . ; or (3) bring the child immediately before the juvenile court or promptly contact a juvenile court intake officer. The intake officer shall determine if such child should be released or detained. Prior to an informal detention hearing, such child shall be placed in detention, if necessary, only in such places as are authorized by section 24A-1403; or (4) bring the child who is suspected of committing a delinquent act before the superior court of the county where the delinquent act occurred if the act is an act over which the superior court has concurrent jurisdiction . . . ; however, pending a committal hearing authorized under Chapter 27-4 or indictment, such child shall be returned and placed in detention, if necessary, only in such places as are authorized by section 24A-1403." (Emphasis supplied.) The police station is not such a place as is authorized by section 24A-1403, especially where there is a Juvenile Detention Center across the street.

In this case the defendant was not released to his mother, was not taken immediately before the juvenile court or intake officer, and was not taken before the superior court.

Code Ann. § 24A-2002 (b) provides in pertinent part that "An extrajudicial statement, if obtained in the course of violation of this Code [Title 24A] or which would be constitutionally inadmissible in a criminal proceeding, shall not be used against him." This section does two things: (1) It makes it clear that the confession of a juvenile shall not be admissible if it is constitutionally inadmissible, or if it was obtained in the course of a violation of the Juvenile Code; and (2) it makes it clear that the legislature intended that there be compliance with the Juvenile Code, not violation thereof.

This court has not directly addressed the admissibility of a confession "obtained in the course of a violation" of the Juvenile

"Hold for Superior Court" on the "DF & CS" sheet.

Code. The cases of *Riley v. State,* 237 Ga. 124, 127-128 (226 SE2d 922) (1976); *Miller v. State,* 240 Ga. 110 (239 SE2d 524) (1977); *Crawford v. State,* 240 Ga. 321 (240 SE2d 824) (1977), and *Marshall v. State,* 248 Ga. 227 (1981), each involved the constitutional admissibility of a juvenile's confession.

In *Williams v. State,* 238 Ga. 298, 301 (232 SE2d 535) (1977), no violation of the Juvenile Code was found because the police contacted the superior court judge who was also the juvenile court judge and his parents were present when the confession was given. In *Marshall v. State,* supra, the juvenile was advised on two different occasions of his right to be questioned at a place other than the police station and the court found that the juvenile waived his rights under Code Ann. § 24A-2002 (b), supra.

Because this court has not directly addressed the question of the admissibility of a confession obtained in the course of a violation of the Juvenile Code, I would grant certiorari. I therefore respectfully dissent.