Argued and submitted June 1, 1981, affirmed January 12,
petition for rehearing denied April 24, 1982

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## DENNIS DEAN KERSTING,
*Petitioner on Review.*

(No. C 79-01-30263,    CA 15260,    SC 27698)

638 P2d 1145

Phillip M. Margolin, Portland, argued the cause and filed the briefs for petitioner on review.

Karen H. Green, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the petition for review and brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

DENECKE, C. J.

## DENECKE, C. J.

The defendant was convicted of murder. The Court of Appeals affirmed his conviction. 50 Or App 461, 623 P2d 1095 (1981). We granted review solely to consider one contention made by the defendant. That contention was that the Court of Appeals erred in adopting the "reliability" test for the admission of scientific testimony rather than the standard that scientific testimony must be based upon methods generally accepted in the scientific community. For examples, *Frye v. United States,* 293 F 1013 (DC Cir 1923); *United States v. Baller,* 519 F 463 (4th Cir 1975), *cert den* 423 US 1019, 96 S Ct 456, 46 L Ed2d 391, 79 ALR3d 294 (1975).

Upon a review of the record we find that we cannot reach this issue.

Hairs were found on the victim's clothing and body. Admittedly, the defendant had been with the victim an hour or so before she was killed; nevertheless, the state contended that if the jury found those hairs were those of defendant, their presence had significance.

The state called a witness, Mrs. Carpenter, who testified she had training and experience in comparing hair samples. She obtained the hairs from the victim, and also obtained hairs from the defendant's head and limb. She placed the hairs on slides and while the hairs from the victim and the defendant were side by side she examined them under a microscope.

The defendant objected to the use of such evidence and an omnibus hearing was held on the issue. The defendant called a witness, Miss Carlisle, who, in effect, testified that the methods used by the witness called by the state had no general scientific acceptance. The trial court ruled that the state could introduce such testimony.

At the trial before the jury the two witnesses again testified. After stating the procedures followed in making comparisons between the hairs found on the victim and those of the defendant, the state's witness testified she found one hair taken from the victim's sweater to be "indistinguishable" from some head hairs of the defendant; two hairs from the victim were not "similar" either to the

defendant's or the victim's hair; and one hair was found to be "indistinguishable" from the victim's. She stated a limb hair taken off the victim's hand was "similar" to an arm hair of the defendant.

She defined "indistinguishable":

"* * * if I feel like I can throw that hair in that pile of standards [hair from a known person] and not be able to pick it up, not be able to decide which one that is, I'll call it indistinguishable. * * *."

Similarly, she defined a hair having some common characteristics to other hairs to be "similar."

The witness also testified:

"* * * There are instances where hair can show such unusual characteristics that you can actually state that that hair came from that person.

"Q I take it there were no such abnormalties or peculiarities present in the hairs that you examined in this case?

"A Right. I did not state that they came from that person."

The defendant's witness, Miss Carlisle, on direct examination by the defendant, testified before the jury as follows:

"The hair could have come from the suspect. It is possible, but it is impossible from this small sampling because of the fact that there was nothing unique about it to say that that hair did come from this person.

"Q Now, are you familiar with the terminology of concluding that particular hairs are indistinguishable from an unknown hair?

"A Yes, I am.

"Q Does that terminology mean anything in particular to you?

"A I agree that the hair in question was indistinguishable from the suspect's hair. In other words, both hairs were brown and there was nothing unique about them. However, that hair was also indistinguishable from my hair and possibly could be indistinguishable from any of your hairs.

"When you hear the term 'indistinguishable,' it does not mean that this hair come from the person. We know that from looking at a hair.

"Q   Are you familiar with the terminology that a particular hair may be similar to known standard hairs?

"A   Yes, I am. And, again, I would agree that the hair in question was similar to the suspect's hair. But again, it's similar to very many of my hairs and similar to many other hairs that I have looked at."

Both the expert called by the state and the expert called by the defense agreed that hairs could be compared by visual observation and an opinion could be reached that hairs were "indistinguishable," "similar" or not "similar." They also agreed that one of the hairs found on the victim was "indistinguishable" from a hair from the defendant and another "was similar." Neither could testify that the hairs found on the victim came from the defendant.

The issue of evidentiary competency of the opinions of expert witnesses, as was considered by the Court of Appeals, is not presented. The challenged evidence was testimony of mere observations, albeit observations aided by devices. However, the witness offered no opinion on identity but testified to what she observed; therefore, no opinion testimony was offered.

If the technique used by the state's witness to substantiate her opinion that the hairs were "indistinguishable" or "similar" could be classified as the use of a scientific method, it is immaterial in this case whether the method used was either "reliable" or generally accepted in the scientific community because both witnesses formed the same opinion.

■      The defendant also objected to the testimony of the state's witness that some of the hairs were "indistinguishable" or "similar" on the ground such evidence "had no probative value." The defendant did not elaborate on this ground. We infer, however, that the defendant's contention is that the evidence was inadmissible because the expert was unable to opine that the hair on the victim was from the defendant and that the evidence tended to prove no more than that there was a possibility that the hair was from the defendant because it was "indistinguishable" from hairs taken from the defendant.

■      Evidence that tends to make a fact more probable or less probable has probative value. "Any evidence which

tends to render the fact probable or improbable is relevant * * *." *Klingback v. Mendiola,* 138 Or 234, 239, 6 P2d 237 (1931).[1]

█    We applied this principle of relevancy to evidence of hair samples:

"* * * The requirement that the guilt of the defendant be proved beyond a reasonable doubt does not prevent the admissibility of evidence that does no more than prove possibility or probability. * * *." *State v. Harris,* 241 Or 224, 405 P2d 492 (1965).

Affirmed.

---

[1] Rule 401, Oregon Rules of Evidence provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." These rules were not in effect when this case was tried.