588 A.2d 941

**COMMONWEALTH of Pennsylvania**

v.

**Emerson G. McCAULEY, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 22, 1991.

Filed March 28, 1991.

Andrew L. Winder, Mifflentown, for appellant.

Mary B. Seiverling, Deputy Atty. Gen., Harrisburg, for the Com., appellee.

Before OLSZEWSKI, BECK and TAMILIA, JJ.

TAMILIA, Judge:

This is an appeal from a July 24, 1990 judgment of sentence imposing a term of life imprisonment after a jury

conviction for the second degree murder[1] of Devera Frink. The relevant facts are as follows.

At approximately 11:00 p.m. on Saturday, June 25, 1977, the 21–year old victim was hitch-hiking to her home in Boalsburg after finishing her shift at a waitressing job in State College, Center County, Pennsylvania. The evidence suggests she was forced by appellant and Jessie Taylor, who were riding as passengers, into a van owned and operated by Robert Brown. At one point, the victim attempted to jump from the moving van but was forcibly constrained by appellant and Taylor. Disregarding the victim's pleas not to be harmed, they drove to a secluded area at a ski resort where appellant, who had been using cocaine, and Taylor, in an act of animal brutality, forcibly raped, beat and choked the victim. Afterwards, appellant and Taylor hog-tied the victim's arms and legs with her panty hose, gagged her mouth with a bandana and, because, as appellant stated, "[d]ead people don't talk," threw her off the Route 322 Thompsontown overpass, where she fell 44 feet to her death. By-passers found the victim's partially nude, bound and gagged body the following day.

The eleven year murder investigation took several turns. Shortly after the murder, Brown's van was identified as the possible vehicle used in the abduction. When state police questioned Brown, he gave a false alibi and committed suicide a few days after being confronted with the suspicions against him.

In 1979, the state police suspected appellant's possible involvement in the crime. Thereafter, they questioned appellant and although placing himself at the murder scene, he exculpated himself. The break in the case came sometime in 1985 when Prisk, who, in 1983, had been appellant's cell-mate while appellant was serving time on an unrelated charge, informed the state police that appellant admitted to raping and taking part in the murder of Frink. State police also followed leads which resulted in the questioning of Catherine Crossley, appellant's girlfriend. Crossley, appre-

1. 18 Pa.C.S. § 2502(b).

hensive of divulging admissions made to her by her boyfriend, gave little information which could corroborate Prisk's story. In 1987, Crossley was called to testify before the grand jury investigating the Frink murder and, under oath, she fully reiterated admissions appellant made to her concerning his role in the rape and murder. Additionally, state police obtained evidence developed by Janice Roadcap, a forensic criminalist with 32 years experience in microscopic hair examination. Roadcap, in her testimony, concluded that a hair found on the victim's calf closely resembled appellant's chest hair.

Due to time constraints and lack of resources, the Juniata County District Attorney made a request to the Office of the Attorney General to take over the investigation and prosecution of the case. On September 30, 1988, based on the evidence and testimony set forth above, the grand jury issued a presentment recommending that murder charges be brought against McCauley. A criminal complaint was filed and appellant was tried and convicted by a jury in 1989, twelve years after the murder was committed.

Appellant raises nine issues for our review with which we will deal in seriatim fashion.

Appellant contends the state-wide investigating grand jury was without authority to investigate and issue a presentment. He argues that because the grand jury was convened pursuant to 42 Pa.C.S. § 4544, **Convening multicounty investigating grand jury**, the statutory language limited its jurisdiction to investigation of matters of "organized crime" or "public corruption." Because this case involved an indictment for murder, appellant argues this Court should reverse. We disagree.

Appellant contends that only upon convening a grand jury, pursuant to 42 Pa.C.S. § 4543, **Convening county investigating grand jury**, would the attorney general be empowered to conduct an investigation in this case. That section provides in relevant part:

(a) **General rule.**—In addition to such other grand juries as are called from time to time, county investigat-

ing grand juries shall be summoned as provided in subsection (b).

**(b) On the initiative of attorney for Commonwealth.**—Application may be made to the president judge of the appropriate court of common pleas by the attorney for the Commonwealth for an order directing that a county investigating grand jury be summoned, stating in such application that the convening of a county investigating grand jury is necessary because of the existence of criminal activity within the county which can best be fully investigated using the investigative resources of the grand jury.

*Id.* (emphasis added). Had the grand jury been convened pursuant to this section, appellant contends the attorney general would have had authority to investigate this matter. As stated above, the grand jury was impaneled pursuant to section 4544, which provides in pertinent part:

**(a) General rule.**—Application for a multicounty investigating grand jury may be made by the Attorney General to the Supreme Court. In such application the Attorney General shall state that, in his judgment, the convening of a multicounty investigating grand jury is necessary because of organized crime or public corruption or both involving more than one county of the Commonwealth and that, in his judgment, the investigation cannot be adequately performed by an investigating grand jury available under section 4543 (relating to convening county investigating grand jury).

*Id.* (emphasis added). However, whichever type of grand jury is impaneled, the powers of both remain the same. **Powers of investigating grand jury,** 42 Pa.C.S. § 4548, provides:

**(a) General rule.**—The investigating grand jury shall have the power to inquire into offenses against the criminal laws of the Commonwealth alleged to have been committed within the county or counties in which it is summoned. Such power shall include the investigative resources of the grand jury which shall include but not be

limited to the power of subpoena, the power to obtain the initiation of civil and criminal contempt proceedings, and every investigative power of any grand jury of the Commonwealth. Such alleged offenses may be brought to the attention of such grand jury by the court or by the attorney for the Commonwealth, but in no case shall the investigating grand jury inquire into alleged offenses on its own motion.

**(b) Presentments.**—The investigating grand jury shall have the power to issue a presentment with regard to any person who appears to have committed within the county or counties in which such investigating grand jury is summoned an offense against the criminal laws of the Commonwealth.

Concededly, the investigating grand jury which issued the presentment against appellant had been impaneled for purposes of a multicounty investigation of public crime and corruption. However, the legitimate underlying purpose for which the grand jury is convened does not hinder investigations into other matters which may be brought before it. If, during an investigation of ongoing criminal activity, a grand jury comes upon criminal activity which has been completed, it is not required to close its eyes thereto. *Commonwealth v. Bradfield*, 352 Pa.Super. 466, 508 A.2d 568 (1986), *alloc. denied* 513 Pa. 633, 520 A.2d 1384 (1987). Where properly impaneled, the purpose for which a grand jury is convened does not restrict the grand jury from investigating actions which constitute either criminal activity or probable violations of the criminal laws of the Commonwealth. *In re: County Investigating Grand Jury of October 18, 1982 (Appeal of Stout)*, 501 Pa. 118, 460 A.2d 249 (1983).

The State Attorney General's Office investigating the case chose to bring this murder case before the grand jury already impaneled rather than impanel a new one pursuant to section 4543. The purpose for which a grand jury is convened does not place a limitation on the grand jury's authority to investigate other crimes committed in a

county. As explained in 42 Pa.C.S. § 4548, a grand jury's authority encompasses investigation into statutorily defined criminal offenses committed in the county or counties in which it is summoned. The sixth state-wide investigating grand jury, being duly summoned in Juniata County, had the authority to investigate the kidnap, rape and brutal murder of Devera Frink, a statutorily defined criminal offense, which took place in Center, Mifflin and Juniata Counties.

We additionally reject appellant's argument that notice was defective insofar as the Frink murder investigation was not one of the matters referenced in the attorney general's application to convene the grand jury. There is no requirement that the subject of every notice of submission be among the alleged offenses specifically described in an application to convene an investigating grand jury. *Stout, supra.*

Furthermore, appellant's reliance on *In re: County Investigating Grand Jury of April 24, 1981 (Appeal of Krakower)*, 500 Pa. 557, 459 A.2d 304 (1983), is misplaced. In *Krakower*, a second grand jury was presented with the same evidence which was the subject of a previous grand jury presentment which was quashed as a result of misleading evidence. In the instant case, appellant likens the police investigation herein to the prior presentment in *Krakower.* This argument is wholly without merit. Certainly an ongoing police murder investigation does not amount to a presentment. The trial court found police received information from various individuals. The persons either refused to cooperate or altered their stories because of their close association with appellant.

The investigating arm of the grand jury was necessary in order to uncover additional evidence solidifying the probable cause needed to issue the indictment. Appellant admitted to Prisk his role in the murder in 1981 and 1982. However, Prisk did not relay this information to state police until 1985. During the course of the investigation, police questioned Catherine Crossley. She gave little, if any,

helpful information, although police remained suspicious she knew more than she was willing to tell them. In order to corroborate cell-mate Prisk's story, the grand jury, using its independent investigating authority, compelled the testimony of Crossley. Under oath, Crossley testified as to appellant's admissions implicating him in the rape and murder. Thus, the facts in *Krakower* are inapposite to those in the matter *sub judice,* wherein the grand jury combined Crossley's compelled testimony with police evidence to establish probable cause for indictment.

Appellant next asserts it was error to admit the testimony of Janice Roadcap, the Commonwealth forensic criminalist, allegedly because she was not qualified as an expert.

The Pennsylvania Supreme Court in *Commonwealth v. Topa,* 471 Pa. 223, 230, 369 A.2d 1277, 1281 (1977) established the standards by which scientifically adduced evidence may be qualified for presentation at trial in this Commonwealth when it adopted the notions so vividly expressed in *Frye v. United States,* 54 App.D.C. 46, 293 F. 1013 (D.C.1923):

> Just when a scientific principle or discovery crosses that line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.

*Commonwealth v. Topa, supra* 471 Pa. at 230, 369 A.2d at 1281, *quoting Frye v. United States, supra* [54 App. D.C.] at 47, 293 F. at 1014 (emphasis in original).

Our Supreme Court proceeded in *Commonwealth v. Topa, supra,* to pronounce the rationale for its adoption of the *Frye* standard:

> "The requirement of general acceptance in the scientific community assures that those most qualified to

assess the general validity of a scientific method will have the determinative voice. Additionally, the *Frye* test protects prosecution and defense alike by assuring that a minimal reserve of experts exists who can critically examine the validity of a scientific determination in a particular case. Since scientific proof may in some instances assume a posture of mystic infallibility in the eyes of a jury of laymen, the ability to produce rebuttal experts, equally conversant with the mechanics and methods of a particular technique, may prove to be essential."

*Commonwealth v. Topa, supra* [471 Pa.] at 232, 369 A.2d at 1282, quoting *United States v. Addision,* 498 F.2d 741, 744 (D.C.Cir.1974). *See also: Commonwealth v. Nazarovitch,* 496 Pa. 97, 100–103, 436 A.2d 170, 172–173 (1981).

*Commonwealth v. Middleton,* 379 Pa.Super. 502, 510–511, 550 A.2d 561, 565 (1988). Roadcap has 32 years experience in microscopic hair examination. She has concentrated in this area for over 20 years completing more than 2,000 comparisons. She testified for both the defense and prosecution in over 40 cases and was accepted therein as an expert in microscopic hair examination. In testifying in the instant case, she referred to the practice as a science, and made reference to her reliance on treatises and the FBI manual concerning microscopic hair examination.

█ Although we are unpersuaded by the authority cited by both the Commonwealth and appellant, we hold microscopic hair comparison evidence satisfies the *Frye* standard, *supra.* Various federal and state courts have held the same. *United States v. Cyphers,* 553 F.2d 1064 (7th Cir. 1977), *cert. denied* 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1978) (armed robbery prosecution, expert opinion that human hairs found on items used in robbery could have come from defendants was admissible for whatever value jury might give it). *United States v. Haskins,* 536 F.2d 775 (8th Cir.1976), *cert. denied* 429 U.S. 898, 97 S.Ct. 263, 50 L.Ed.2d 182 (1977) (bank robbery, expert testimony identifying hair sample found in a silk stocking near bank as

matching known sample of defendant's hair admissible; credibility of expert and weight given was for jury to determine and testimony was not invasion of jury's province). *People v. Columbo,* 118 Ill.App.3d 882, 74 Ill.Dec. 304, 455 N.E.2d 733 (1983), *cert. denied* 467 U.S. 1208, 104 S.Ct. 2394, 81 L.Ed.2d 351 (1984) (expert testimony that defendant's hair was similar in color and characteristics to hair found on murder victim's T-shirt had probative value, and although not conclusive, was properly considered by the jury, and neither exclusionary character of hair comparisons nor lack of absolute scientific certainty rendered hair expert's testimony inadmissible). *Paxton v. State,* 159 Ga. App. 175, 282 S.E.2d 912 (1981), *writ denied* 248 Ga. 231, 283 S.E.2d 235 (1982) (expert testimony pubic hairs found at scene of rape matching defendant's admissible). *State v. Pratt,* 306 N.C. 673, 295 S.E.2d 462 (1982); *State v. Kersting,* 292 Or. 350, 638 P.2d 1145 (1982); *State v. Melson,* 638 S.W.2d 342 (Tenn.1982), *cert. denied* 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983); *State v. Clayton,* 646 P.2d 723 (Utah 1982).

■ Accordingly, Roadcap's testimony was legally relevant insofar as it was more probative than prejudicial. It did not mislead, prejudice or confuse the jury but gave a demonstrable accepted form of tying appellant to the crime.

■ Appellant next asserts an inordinate delay occurred between the criminal act and the prosecution thereby prejudicing him.

While there is no statute of limitations in homicide cases, the due process clause of the Fourteenth Amendment of the United States Constitution requires dismissal of criminal charges if pre-indictment delay causes substantial prejudice to the defendant's right to a fair trial and such delay has been employed by police as an intentional device to gain a tactical advantage over an accused. The Commonwealth is not required by the Constitution to file charges as soon as it obtains evidence of a defendant's guilt. Rather, it may delay the filing of charges in order to conduct further investigation. "A delay for a

reasonable investigation does not violate due process even if it adversely affects the defendant's case." *Commonwealth v. Colson,* 507 Pa. 440, 452, 490 A.2d 811, 817 (1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986).

*Commonwealth v. Akers,* 392 Pa.Super. 170, 184, 572 A.2d 746, 753 (1990) (citations omitted). *See also Commonwealth v. Patterson,* 392 Pa.Super. 331, 572 A.2d 1258 (1990) (delay alleged to be unconstitutional or prejudicial to defendant commences at the time a defendant is charged with a crime and not when authorities are aware of it). We agree with the trial court's rationale wherein it stated:

The prosecutor did not have cause to arrest McCauley because he did not incriminate himself by statements, but merely placed himself at the scene. McCauley's exculpatory statements did not give rise to probable cause; therefore, the prosecutor did not have direct evidence at this time [i.e. 1980]. (N.T. January 30, 1989 at p. 30) In March 1985, the first direct evidence that McCauley was a participant was acquired from Gary Prisk. (N.T. January 30, 1989, at p. 31) Trooper Miller and the police, at the direction of the Attorney General, interviewed witnesses to corroborate and gain direction from Prisk's and McCauley's statements. (N.T. January 30, 1989 at p. 33) Finally, in March of 1987, Catherine Crossley implicated McCauley, but later recanted her statements. (N.T. 30, 1989 at p. 36) Later Patricia Walk, Catherine Crossley's daughter, and Mr. Eminhizer, informed the police that Catherine Crossley did have information. (N.T. January 30, 1989, at p. 38 and 39) The investigation continued and ultimately a grand jury was employed to uncover evidence which was unavailable via ordinary means.

The delay was caused by the lack of witnesses, lack of evidence and uncooperative nature of citizens of ill-repute who acknowledged but continuously changed their story, thereby impeding the progress of the police. In *United States v. Lovasco,* 431 U.S. 783 [97 S.Ct. 2044, 52 L.Ed.2d 752] (1977), the Court specifically held that prosecuting a

defendant after investigative delay does not deprive him of due process even if the defense is somewhat prejudiced by the lapse of time. Such is the case at bar. Furthermore, where the defendant fails to state the manner in which he was prejudiced, there is no remedy.

(Slip Op., Quigley, P.J., 7/24/90, pp. 7–8.) *See also Commonwealth v. Arnold*, 331 Pa.Super. 345, 480 A.2d 1066 (1984) (death of an alleged alibi witness whose testimony was corroborative did not deprive the defendant of a fair trial).

Appellant further alleges the transfer of the prosecutorial function from the county district attorney to the state attorney general was in error. We disagree.

■ **Criminal prosecutions,** 71 P.S. § 732–205, provides in pertinent part:

(a) **Prosecutions.**—The Attorney General shall have the power to prosecute in any county criminal court the following cases:

. . . .

(3) Upon the request of a district attorney who lacks the resources to conduct an adequate investigation or the prosecution of the criminal case or matter or who represents that there is the potential for an actual or apparent conflict of interest on the part of the district attorney or his office.

The office of the attorney general is empowered to investigate any criminal offense which it reasonably believes, at the time of the investigation and with information it then possesses, it is able to prosecute under 71 P.S. § 732–205. If challenged, the office of the attorney general should be able to produce evidence which would establish by a preponderance of the evidence that a factual basis exists to support the belief. *Commonwealth v. Goodman*, 347 Pa.Super. 403, 500 A.2d 1117 (1985). Our standard of review is a determination of whether the trial court abused its discre-

tion. *See Commonwealth v. Khorey*, 521 Pa. 1, 555 A.2d 100 (1989).

■ Juniata County District Attorney Clark was a part-time district attorney in an eighth class county. After reviewing a 500–page police report, he determined that further investigation was necessary prior to the case proceeding to trial. There is evidence of record from which the trial court could determine Clark was of the sincere belief his office lacked adequate resources to prosecute the case. As a part-time district attorney, Clark worked between 30 to 40 hours per week at an annual salary of $15,000. His budget provided him with an assistant whose annual salary totaled $8,000. While the county commissioners gave assurances that the costs and expenses would be borne and state police would provide manpower, the time constraints of his office were at issue. He believed the case would be a full-time project lasting a considerable period of time. Because of this, he could not "stay on top of it and pursue other obligations of the district attorney." Compounding the problem of time constraints was Clark's sincere belief he did not have the expertise to handle a murder case of this magnitude. He testified his expertise was limited to trying forgery, burglary, thefts, assaults, child molestations and driving under the influence cases. Accordingly, there is overwhelming evidence from which the trial court could find the state attorney general's office proved by a preponderance of the evidence that they reasonably believed they were able to prosecute under section 205. Thus, the trial court did not abuse its discretion.

■ Appellant next asserts it was error for the trial court to prohibit his trial counsel from cross-examining Pennsylvania State Trooper Gantz concerning statements made by two travelers of Route 322 on the evening in question. As related in the State Police Criminal Investigation Report, Trooper Gantz interviewed Walter and Gladys Donachy in August of 1977. The statement contained in the police report indicated the Donachys stated they were traveling home and passed over the Thompsontown Route

322 overpass near the estimated time of the murder. They witnessed three vehicles parked on the side of the road. The vehicles purportedly identified by the Donachys were a mustang, a Chevy and an unidentified vehicle. They thought they saw a white female[2] stretched out on the front seat of one of the vehicles with her legs sticking out the driver's side door. Trial counsel wanted to cross-examine the officer concerning the Donachys' statements contained in the police report. Trial counsel's offer of proof can be summarized as follows. Counsel intended to establish through the use of the Donachys' statements that the female they purportedly saw in the vehicle was victim Frink. Accordingly, because the Donachys' description of the vehicle in which they saw a female did not match that of Robert Brown's van, defense counsel intended to show that appellant could not have been involved. We disagree with appellant's speculative reasoning and view his argument as an attempt to introduce exculpatory evidence which is inadmissible hearsay.

In his scenario, appellant asks us to accept the identifications of the vehicles made by the Donachys as the truth of the matter asserted. Then we are to allow the jury to draw further alleged truths from these assertions—that appellant was not one of the passengers of these vehicles because Brown's van was not involved; and, therefore, someone other than appellant pushed Frink to her death. This is clearly multiple hearsay not falling within any recognized exception to the hearsay rule. We further hold, that which appellant sought to prove with the suggested cross-examination is so speculative and conjectural in nature, as to be inadmissible as a matter of law.

Appellant next argues the trial court gave a confusing charge to the jury on the distinction between intent to kill and intent to kill with premeditation. In questions concerning jury instructions, in determining whether the trial judge committed an abuse of discretion or

2. We point out the Donachys were not even sure the person spread out in the front seat was female.

error of law, we consider the charge as a whole in light of the evidence presented. *Papandrea v. Hartman,* 352 Pa.Super. 163, 507 A.2d 822 (1986). If error is found to have been committed, a new trial is warranted only where such error has been clearly prejudicial to appellant. *Commonwealth v. Tharp,* 373 Pa.Super. 285, 541 A.2d 14 (1988). Even where a requested instruction is relevant, a trial court need not include it if the charge already covers the point. *Id.*

Our review of the February 15, 1989 charge finds the trial court instructed the jury as to the specific elements of first as well as second and third degree murder as defined by statute. He elaborated on the elements of each crime by defining them in accordance with established case law. The jury instructions were clear and concise. Furthermore, during deliberations, the jury sought a clarifying instruction. The court then reinstructed the jury and redefined the elements of first, second and third degree murder. Accordingly, the trial court did not abuse its discretion.

Appellant next argues it was improper for the prosecution to call Catherine Crossley as a witness, alleging the Commonwealth knew, before she was called, they would seek to impeach her. This argument is wholly without merit.

In a hearing away from the jury prior to Crossley being called to the stand to testify in the Commonwealth's case-in-chief, the following ensued:

DEPUTY ATTORNEY GENERAL:

Q. Mrs. Crossley, I'm advised by the sheriff that you have told them that you didn't want to testify today.

A. No, it's not that. I felt like I was going to pass out downstairs.

Q. Are you willing to testify?

A. If I can get myself together here first.

Q. .... Are you ready?

A. I guess so.

Q. I'm going to be asking you a series of questions, Mrs. Crossley. Are you willing to answer those questions?

A. I guess.

MR. KANE: In that case, Your Honor, I would ask that the jury be brought in.

THE COURT: Well, we understand that she is reluctantly here but willing to testify. Bring the jury in, please. (So done)

(T.T., 2/13/89, pp. 512–13; emphasis added.) Once on the witness stand, Crossley recanted statements she previously made under oath to the grand jury. When it became apparent Crossley was protecting the appellant by changing her testimony, the prosecutor made a request in front of the jury for "a hearing . . . outside the presence of the jury on an issue." (N.T. at 518.)

 It is established that counsel may impeach his own witness on a plea of surprise when the witness has given testimony which is contradictory to statements which the witness had made earlier and are harmful to the party calling the witness while beneficial to the opposing side. *Commonwealth v. Smith*, 511 Pa. 343, 513 A.2d 1371 (1986), *cert. denied* 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987). In addition, our courts have been liberal in allowing a party to cross-examine his own witness when it is believed that the interests of truth and justice so require. *Smith, supra; Commonwealth v. Waller*, 498 Pa. 33, 444 A.2d 653 (1982). *See also Commonwealth v. Dancer*, 452 Pa. 221, 305 A.2d 364 (1973). It is evident Crossley voluntarily took the stand and, albeit reluctant, gave every indication she would testify against appellant. Accordingly, it was not improper for the Commonwealth to call her as a witness. Her trial testimony, which recanted her grand jury testimony, was clearly prejudicial to the Commonwealth while beneficial to appellant.[3] It was not improper

3. Appellant's reliance on *Commonwealth v. Musolino*, 320 Pa.Super. 425, 467 A.2d 605 (1983), is misplaced. *Musolino* found it to be error to permit the district attorney to call a priest-witness who he knew would assert the priest penitent privilege. Here, Crossley did not

for the Commonwealth to impeach her once she surprised them with her testimony.

Finally, appellant asserts the trial court erred in not granting a mistrial as a result of the prosecution's statements. He contends the prosecutor, by asking for the removal of the jury while Crossley was on the stand, conveyed to the jury his personal disbelief of the credibility of Crossley. There is no evidence to support this contention. Additionally, the prosecutor had a right to impeach and thereby discredit his own witness in the event of surprise testimony. We, therefore find the prosecutor followed the proper procedure under the circumstances and, in fact, prevented the jury from being tainted. Accordingly, we affirm.

Judgment of sentence affirmed.

BECK, J., concurs in the result.

assert a privilege. Additionally, she would have been granted immunity and could not, therefore, incriminate herself.