Argued and submitted December 19, 2005, reversed and remanded July 19, 2006

# STATE OF OREGON,
*Appellant,*

*v.*

# ORRIN TAYLOR OWENS,
*Respondent.*

## 0111-53181; A124156

139 P3d 984

Rolf C. Moan, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Kenneth E. Kahn II argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

DEITS, J. pro tempore.

**DEITS, J. pro tempore**

Defendant is charged with driving under the influence of intoxicants (DUII). ORS 813.010(1)(a). The state appeals under ORS 138.060(1)(c), assigning error to the trial court's pretrial order granting defendant's motion to exclude evidence concerning the collection of defendant's blood sample, as well as evidence that a forensic scientist tested the sample and determined that it contained 0.13 percent alcohol. The case comes to us a second time. *See State v. Owens*, 187 Or App 719, 69 P3d 763 (2003) (*Owens I*).

In this case, the trial court excluded the disputed evidence on the ground that the state failed to demonstrate that defendant's blood was drawn in a scientifically valid manner and that the evidence of the blood draw satisfied the foundational standards for "scientific evidence" under *State v. Brown*, 297 Or 404, 417, 687 P2d 751 (1984). The trial court ruled that the exclusion of the evidence concerning the blood draw meant that evidence of the blood test results was also inadmissible. We reverse and remand.

The facts on the record for the pretrial motion are undisputed. Defendant was hospitalized following a single-vehicle accident in 2001. A sheriff's deputy responded to the accident scene and observed that defendant was lethargic, had slurred speech, and gave limited, delayed responses to the paramedics. While at Oregon Health & Science University Hospital (OHSU), defendant consented to a blood alcohol content (BAC) test. A registered nurse working at OHSU drew a blood sample from defendant in the presence of the deputy and a state trooper. The deputy delivered the blood sample vial to an Oregon State Police (OSP) evidence locker. An OSP forensic scientist, Graf, tested the sample and determined that it contained 0.13 percent blood alcohol by weight. The state charged defendant with one count of DUII.

When the nurse was unavailable on the day scheduled for trial in 2002, defendant made a motion *in limine* requesting the exclusion of all evidence of the blood draw and BAC test on two alternative grounds, namely, that the state (1) had not shown compliance with the statutory requirement of ORS 813.160(2) that blood samples be collected by a doctor

or a person acting under a doctor's supervision,[1] and (2) had not met foundational requirements for admitting evidence of the blood collection method as scientific evidence under *Brown*. In the initial proceeding, the trial court granted defendant's motion on the first ground only, concluding that the state had failed to establish that the sample was taken in compliance with ORS 813.160(2). The state appealed, arguing that a violation of ORS 813.160(2) alone could not be a basis to exclude evidence.

In *Owens I*, 187 Or App at 719, we agreed with the state's argument and reversed and remanded for reconsideration in light of *State v. Warner*, 181 Or App 622, 47 P3d 497, *rev den*, 335 Or 42 (2002). Our decision in *Warner* also involved a BAC test based on an emergency room blood draw. In *Warner*, we applied the general rule of nonexclusion stated in ORS 136.432, which provides that courts cannot exclude "relevant and otherwise admissible evidence in a criminal action" merely because the evidence was obtained in violation of a statutory provision, unless such exclusion is required by the state or federal constitution, the rules of evidence governing privileges and hearsay, or the rights of the press. *Id*. at 631-32. We explained that ORS 136.432 "constrains the courts from creating rules of exclusion where the legislature itself has not created them," *State v. Thompson-Seed*, 162 Or App 483, 489, 986 P2d 732 (1999), and held that the legislature did not intend ORS 813.160(2) to be a foundational rule for admissibility. *Warner*, 181 Or App at 631-32. We concluded that ORS 813.160(2) "merely directs police how to obtain a blood test and does not require exclusion of evidence obtained in violation of its dictates." *Id*. at 632, 634.

We also noted in *Warner I* that, in contrast to ORS 813.160(2), the ORS 813.160(1) requirement to test a blood sample in a qualified laboratory is a foundational rule of evidence because it expressly implicates the validity of the

---

[1] ORS 813.160(2) provides, in part:

"In conducting a chemical test of the blood, only a duly licensed physician or a person acting under the direction or control of a duly licensed physician may withdraw blood or pierce human tissue."

analysis.[2] *Id.* at 634. We concluded that, because noncompliance with ORS 813.160(2) does not make blood draw evidence "*not* 'otherwise admissible,' " as defendant had argued, the blood sample evidence was admissible and ORS 136.432 requires admission of such evidence. *Id.* at 632, 634 (emphasis in original).

When the trial court again considered this case in 2004 on remand, based on *Owens I*, defendant moved to exclude all the blood sample evidence on the alternative ground, arguing that evidence of the blood collection is "scientific evidence" that, on these facts, "does not get past the *Brown* guidelines." The trial court held an OEC 104 hearing and heard testimony about the collection, chain of custody, and testing of defendant's blood sample. The witnesses were police officers who observed the blood draw and Graf, the forensic scientist who performed the BAC test. A state trooper testified that he recognized the nurse as a lead trauma nurse in the OHSU emergency room, based on his past experience at the hospital, that he saw her name tag disclosing her status as a registered nurse at the time of this incident, and that he observed her draw blood from defendant by syringe into a gray-stoppered vial. The sheriff's deputy testified that he watched the OHSU nurse apply a tourniquet to defendant's arm, insert a needle, withdraw blood to fill several vials, and hand a vial to him. The deputy said that he delivered the vial to an evidence storage locker of the OSP forensics laboratory.

Graf testified that she recorded a BAC test result of 0.13 percent that was verified according to the laboratory's procedural standards by obtaining two sets of identical test

---

[2] ORS 813.160(1) provides, in part:

"A chemical analysis is valid under ORS 813.300 [which provides that not less than 0.08 percent blood alcohol constitutes being under the influence of intoxicating liquor] if:

"(a) It is an analysis of a person's blood for alcohol content and is performed in:

"* * * * *

"(C) A forensic laboratory established by the Department of State Police under ORS 181.080 [standards] that is accredited by a national forensic accrediting organization."

results. She also described her employment at the OSP foren-
sics laboratory, her knowledge of the chain of custody of the
sample, the refrigeration of the sample to minimize microbial
growth, and the gray color of the vial stopper, which, she
explained, would assure that she would be testing a whole
blood sample. Graf offered no further evidence about the
implications of the test result, such as what the result meant
regarding defendant's blood alcohol level at the time that
defendant was driving or when the blood sample was drawn.
The state asserts that it does not intend to offer any such
evidence.

■       At the conclusion of the hearing, the trial court ruled
that evidence about the blood collection method, that is, the
blood draw from defendant's arm, was "scientific evidence"
*per se* and required the court to apply the foundational *Brown*
factors. The court then concluded that the blood collection
evidence was inadmissible under OEC 702 because the state
had not satisfied the *Brown* test.[3] The court also ruled that
the BAC test result evidence was inadmissible because, in its
view, the test technique included the blood draw and, conse-
quently, failed to satisfy the *Brown* test. The trial court
explained that its ruling was based on "evidentiary," not
"statutory," grounds:

> "And also I want to be clear that the court is not ruling
> that in any case where the statute [ORS 813.160(2)] is
> * * * not complied with, that that necessarily means that
> there is an OEC 702 problem. * * *

> "For instance, if you didn't have a physician or someone
> under the supervision of a physician, but * * * the state was
> able to produce the person who did the blood draw and able
> to meet all of the 702 requirements, then we wouldn't have
> a 702 problem. But under the unique facts of this case, that
> the state is not able to meet its burden under OEC 702."

On appeal, the state argues that the proffered evi-
dence about the collection of defendant's blood sample is not

---

[3] OEC 702 provides:

"If scientific, technical or other specialized knowledge will assist the trier
of fact to understand the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience, training or education
may testify thereto in the form of an opinion or otherwise."

"scientific evidence" that requires the explanation of an expert and, therefore, a *Brown* foundation is not necessary. The state contends that the blood collection evidence is admissible because it is relevant to show the integrity of the complete chain of custody from defendant to the OSP laboratory. According to the state, evidence about how the blood was drawn should affect only the weight given to the BAC test result, not its admissibility. In the state's view, the only "scientific technique" at issue here is the blood test. As the state points out, defendant does not challenge the admission of Graf's testimony about the blood test and its result, except on the basis of the inadequacy of the foundation for admission of evidence about the blood collection. The latter, according to defendant, is a necessary prerequisite to admission of the blood test result.

The critical questions here, therefore, are twofold. The first question is whether evidence about a blood draw is "scientific evidence" to which a court must apply the *Brown* factors. The second is whether the blood collection method, if not itself scientific evidence, is such an essential part of the blood test technique that evidence of it must meet the *Brown* factors as a necessary prerequisite to admission of the blood test results.

■ We review a trial court's preliminary determination of admissibility in an OEC 104 hearing for errors of law, *State v. Galloway*, 161 Or App 536, 540, 984 P2d 934 (1999), *rev den*, 330 Or 331 (2000), including rulings as to whether particular evidence is scientific and is admissible as "scientific evidence," *State v. Sanchez-Cruz*, 177 Or App 332, 336, 33 P3d 1037 (2001). For the reasons that we will explain, we conclude that the proffered evidence about the blood draw is not itself "scientific evidence," nor is it within the scope of a court's evaluation of the scientific technique involved in a BAC test of a blood sample. Accordingly, we hold that the trial court erred in suppressing the evidence of the blood draw and the blood test results.

A review of earlier decisions related to this issue is helpful to understand what the Oregon courts consider to be "scientific evidence" and the circumstances in which the *Brown* factors must be considered. The Supreme Court's

stated purpose in *Brown* was to "adopt traditional admissibility standards for expert testimony." *Brown*, 297 Or at 408. The court articulated a rule to ensure that expert opinion testimony was relevant under OEC 401,[4] was helpful to the factfinder under OEC 702, and was excluded when necessary in keeping with the dictates of OEC 403.[5] *Id*. at 409. In *Brown*, the court reiterated its view that the test that it articulated for the admission of scientific evidence applied only when the court was considering expert testimony, pointing to its decision in *State v. Kersting*, 292 Or 350, 354, 638 P2d 1145 (1982). In *Kersting*, the court did not reach the question of admissible "scientific evidence" because the disputed evidence was "not opinion testimony of experts, but testimony of mere observations." *Brown*, 297 Or at 410 (internal quotation marks omitted). The Supreme Court has also indicated that just because evidence comes within a subject that is "open to expert testimony" does not mean that only expert testimony may be presented on that subject. *See State v. Clark*, 286 Or 33, 38, 593 P2d 123 (1979) (citation omitted) (lay testimony that defendant lacked signs of intoxication was admissible as competent to impeach BAC result based on chemical breath test).

The court in *Brown* further explained that scientific evidence "draws its convincing force from some principle of science, mathematics and the like." 297 Or at 407. Such evidence is presented by an expert witness who can "explain the scientific principles which are said to give the evidence its reliability or accuracy." *Id*. at 408. In *State v. O'Key*, 321 Or 285, 292, 899 P2d 663 (1995), the Supreme Court added that it looks for "scientific method[, which] is a validation technique, consisting of the formulation of hypotheses, followed

---

[4] OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[5] OEC 403 does not bear directly on the issues in this case but completes the context for application of the *Brown* factors. It provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

by observation or experimentation to test the hypotheses." The Supreme Court applied those principles in *Jennings v. Baxter Healthcare Corp.*, 331 Or 285, 304, 14 P3d 596 (2000), to a doctor's testimony about his medical diagnosis to hold that "the proponent of [such] testimony must show that it is scientifically valid" because a jury is likely to believe that the testimony is a scientific assertion. The primary criterion of whether certain evidence constitutes "scientific evidence" is therefore whether the evidence "possesses significantly increased potential to influence jurors as a scientific assertion." *Sanchez-Cruz*, 177 Or App at 341.

■    The above decisions make clear that it is the nature of the particular evidence and not the general subject matter of the evidence that determines whether the evidence constitutes "scientific evidence" as the term is used in *Brown.* In other words, here, the fact that blood draw evidence falls within the general subject matter of medicine or science does not necessarily make it "scientific evidence." In sum, "scientific evidence" must be opinion evidence that is proffered by an expert witness and possesses significantly increased potential to influence jurors as a scientific assertion.

In this case, the state seeks to introduce evidence concerning the drawing of blood from defendant. Specifically, the state seeks to offer the testimony of police officers about their personal observations of the blood draw by the nurse and the custody of defendant's blood sample from the time that a nurse drew the blood from defendant in a hospital setting to delivery of the blood sample into an evidence locker. Although drawing blood by means of a syringe is "medical" in nature, that does not necessarily make observations of the blood draw "scientific evidence." The evidence proffered consists of direct observations made by well-informed lay witnesses. The fact that the state trooper strengthened his testimony with direct knowledge of the nurse's qualifications and her experience collecting blood is not sufficient to make his lay testimony anything more than "well-informed." A lay witness would reasonably be expected to be familiar with blood sample collection performed by a nurse in a clinical setting. To the extent that any part of the officers' testimony

may be opinion testimony, it is "[r]ationally based on the perception of the witness" and is "[h]elpful to * * * the determination of a fact in issue," OEC 701,[6] namely, whether defendant drove with a BAC at or above 0.08 percent.[7] Thus, rather than implicating OEC 702, such evidence must satisfy the foundational requirements of OEC 701, the evidence rule on opinion testimony of lay witnesses. Defendant does not challenge the admission of the evidence on that basis.

We conclude that the disputed evidence here is not "scientific evidence" that requires a foundation based on the *Brown* factors. As discussed, this is not the type of evidence that can be presented and explained only by an expert. Lay factfinders can reasonably be expected to understand and weigh the credibility and strength of evidence about who performed a blood draw by syringe and how the person did so. The evidence proffered about the blood collection is simply not the type of evidence that possesses significantly increased potential to influence jurors as a scientific assertion.

As the state argues, the evidence of the police officers' testimony has relevance under OEC 401 and OEC 402[8]

---

[6] OEC 701 provides:

"If the witness is not testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to those opinions or inferences which are:

"(1) Rationally based on the perception of the witness; and

"(2) Helpful to a clear understanding of testimony of the witness or the determination of a fact in issue."

[7] As pertinent to this defendant, ORS 813.010(1) defines the offense of DUII as follows:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person[.]"

Accordingly, the Supreme Court has held that the state must prove a DUII charge of driving with alcohol intoxication based on a measured BAC of 0.08 percent or higher strictly by showing the necessary measurement of alcohol content of a defendant's breath or blood by chemical analysis. *O'Key*, 321 Or at 308.

[8] OEC 402 provides:

"All relevant evidence is admissible, except as otherwise provided by the Oregon Evidence Code, by the Constitutions of the United States and Oregon, or by Oregon statutory and decisional law. Evidence which is not relevant is not admissible."

to a factfinder's need to determine beyond a reasonable doubt under ORS 813.160(1) that the blood sample is defendant's and that the chemical analysis was validly conducted at a qualified forensics laboratory. *See Warner*, 181 Or App at 634-35.[9] Showing that the blood sample was a valid blood draw from defendant involves laying a traditional chain of custody foundation, which is the purpose served by the officers' proffered testimony. As the state points out, evidence of the blood collection method and blood sample handling is pertinent to a factfinder's assessment of the weight, but not the admissibility, of the chemical test result. Similarly, defendant could conceivably proffer lay testimony to impeach the test results, as he hypothesized that he would want to do if his blood were collected by a stranger jabbing him with a syringe as he stood on a street corner. *See, e.g., Clark*, 286 Or at 38 (defense could use lay testimony of his observed condition to impeach a BAC test result).

Defendant also argues, and the trial court agreed, that the blood draw is part of the "scientific technique" of the blood test and because of that, *Brown*'s foundational requirements must be satisfied, even if the blood collection method standing alone is not "scientific evidence." We do not believe, however, that a blood draw is part of the "scientific technique" used in a blood test. A nurse's collection of blood from a person's arm by syringe is too remote from the blood test itself to be considered an integral part of a particular chemical test technique. As discussed above, the foundation for the admission of blood collection evidence under these circumstances is adequately addressed by the requirements of OEC 401, OEC 402, and OEC 701.

We conclude that the trial court erred in excluding the blood test evidence on the ground that the blood draw evidence must meet *Brown*'s evidentiary standard merely because the blood sample was subjected to a chemical BAC test. We reach the same conclusion that we did under similar circumstances in *Warner*: All the evidence about the blood

---

[9] The pertinent part of ORS 813.160(1) is set out in footnote 2. Elements expressed in the plain language of that legislated rule of evidence include that (1) the tested blood sample must be the blood of the charged person and (2) the chemical analysis must be performed in a qualified facility, one of which is the OSP forensics laboratory.

sample is "relevant and otherwise admissible evidence in a criminal action" under ORS 136.432, which *requires admission of such evidence*. As in *Warner*, the blood sample evidence does not violate a statutory rule of exclusion nor is its exclusion required by the state or federal constitutions, the rules of evidence governing privileges and the admission of hearsay, or the rights of the press. ORS 136.432. For the reasons we have explained, the credibility of the testimony about the blood draw goes only to the weight of the evidence concerning defendant's BAC test result. Graf's testimony, as we have noted, is not challenged on an independent basis. ORS 813.160(1) is a foundational rule of evidence that bears on the "validity, reliability, relevance, or authenticity of a blood test" as evidence of the crime of DUII. *Warner*, 181 Or App at 634-35. The forensic scientist's testimony is relevant and helpful expert testimony that the legislature has expressly made admissible under ORS 813.160(1).

Reversed and remanded.