Commonwealth *v.* Gwyn, Appellant.

Argued November 13, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Robert E. Yetter,* with him *Bruce D. Desfor,* and *Metzger, Wickersham, Knauss & Erb,* and *Meyers & Desfor,* for appellant.

*Jerome T. Foerster,* Assistant District Attorney, with him *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 25, 1971:

Appellant was indicted and tried for the murder of his brother, Daniel Gwyn, on September 23, 1967. After a quarrel, defendant pulled out a knife, stabbed his brother and killed him. The jury found the appellant guilty of murder in the first degree and fixed the penalty at life imprisonment.

After the lower Court denied defendant's motions for a new trial and for arrest of judgment, the defend-

ant took the present appeal from the judgment of sentence.

Appellant makes five contentions: (1) prejudicial error in denying the motion for withdrawal of a juror; (2) the Court's charge on reasonable doubt constituted basic error; (3) he was sufficiently intoxicated to reduce the killing to murder in the second degree; and (4-5) that adequate legal provocation existed to reduce the killing to voluntary manslaughter and/or self-defense.

During the course of the trial, the Commonwealth called Barbara Burnett as a witness and during her direct examination she testified (in an unsolicited response) that the appellant said to her, "I killed *my cousin.*" Appellant's counsel moved for withdrawal of a juror and although this motion was denied, the trial Judge specifically instructed the jury that this statement was to be completely disregarded.

Appellant contends that the unsolicited statement attributed to him by Barbara Burnett was so prejudicial that it was error to refuse to withdraw a juror. We disagree.

Appellant bases his assertion that the lower Court erred in refusing to withdraw a juror on *Commonwealth v. Gibson*, 275 Pa. 338, 119 Atl. 403. In *Gibson*, this Court reversed the lower Court verdict because the district attorney attempted to introduce into evidence another unconnected crime for which the defendant had been convicted. The *Gibson* case is clearly distinguishable from the present case, because in *Gibson*, the district attorney specifically asked the witness, "Q. Was that after he had been convicted of shooting your brother?" In the present case, the statement made by Barbara Burnett was (we repeat) an unsolicited and unresponsive answer, and not an attempt by the district attorney to elicit this improper evidence. Furthermore,

this improper evidence was cured by the lower Court's timely instruction to the jury to disregard the statement.

Appellant next contends that the lower Court's charge on reasonable doubt was erroneous. We have carefully reviewed the charge and find no basis for this contention. See *Commonwealth v. Williams*, 432 Pa. 557, 248 A. 2d 301.

Appellant next contends that the first degree murder verdict could not be sustained because of his state of intoxication. Defendant and the victim and several witnesses had been drinking together but there was no evidence how much vodka or gin or beer defendant had drunk, and all the witnesses testified that defendant was not drunk. Appellant is correct in his contention that intoxication can reduce a killing from first degree murder to second degree murder where the intoxication is so great as to render the accused incapable of forming a willful, deliberate, and premeditated design to kill. *Commonwealth v. Ingram*, 440 Pa. 239, 270 A. 2d 190; *Commonwealth v. Walters*, 431 Pa. 74, 244 A. 2d 757; *Commonwealth v. Simmons*, 361 Pa. 391, 65 A. 2d 353. Whether the appellant was intoxicated to such a degree as to render him incapable of forming a willful, deliberate and premeditated design to kill was a question for the jury, and after reviewing the record, we cannot conclude that their verdict was insupportable or erroneous.

Appellant's final contention is that there was sufficient "legal provocation" to reduce the killing to voluntary manslaughter. In order to properly evaluate this contention, it is important to note the events preceding defendant's act of stabbing his brother to death. Appellant and decedent were drinking at Ralph's Bar and had an argument which culminated in the decedent slapping the appellant across the face. Decedent left

the bar, and approximately one hour later appellant left. Appellant first went to his home and then to the home of the decedent. After entering decedent's home, defendant confronted the decedent in his kitchen. Decedent was seated at the kitchen table with a bottle of whiskey in front of him. After exchanging words—the exact interchange does not appear in the record—decedent got up from his chair and proceeded toward the appellant. The decedent was unarmed. Appellant then pulled a knife from his jacket and stabbed the decedent, killing him. We cannot agree that these facts and circumstances established legal provocation or self-defense.

This Court, in *Commonwealth v. Ingram*, 440 Pa., supra, said (page 244): "In Commonwealth v. Walters, 431 Pa. 74, 244 A. 2d 757, a *unanimous** Court said (pages 82-83): 'The law on both voluntary manslaughter and intoxication as a defense to murder is clear. In Commonwealth v. Paese, 220 Pa. 371, 373, 69 Atl. 891, 892 (1908), we defined voluntary manslaughter quite explicitly. "To reduce an intentional blow, stroke or wounding, resulting in death, to voluntary manslaughter, there must be sufficient cause of provocation and a state of rage or passion, without time to cool, placing the prisoner beyond the control of his reason, and suddenly impelling him to the deed. If any of these be wanting—if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder: Com. v. Drum, 58 Pa. 9 (17)." This explanation retains vitality today. See Commonwealth v. Palermo, 368 Pa. 28, 81 A. 2d 540 (1951); Commonwealth v. Cargill, 357 Pa. 510, 55 A. 2d 373 (1947). The evidence in the present case fur-

---

* Italics in *Commonwealth. v. Ingram* opinion.

nishes no real proof whatsoever that [appellant] acted in the heat of passion. . . .' "

In *Commonwealth v. Dews*, 429 Pa. 555, 239 A. 2d 382, the Court said (page 559) : "It has been long settled in this Commonwealth that, if the accused has had time to 'cool,' the alleged provocation is not sufficient to generate that degree of passion necessary to form the basis of a voluntary manslaughter verdict. Nor can the accused, by recalling some past injury or insult, establish a foundation for a manslaughter verdict. See, e.g., Commonwealth v. Gelfi, 282 Pa. 434, 128 Atl. 77 (1925) ; Commonwealth v. Russogulo, 263 Pa. 93, 106 Atl. 180 (1919)."

In *Commonwealth v. Walters*, 431 Pa., supra, this Court said (page 82) : "The mere fact that he had been arguing with the deceased and that she had cursed at him, will not, by itself, be sufficient to show that passion motivated the crime, or that there was no time to cool."

A review of the evidence clearly shows that the appellant failed to establish that the stabbing resulted from legal provocation or that it was committed in self-defense.

We find no merit in any of appellant's contentions.

Judgment of sentence affirmed.

Mr. Justice Roberts concurs in the result.

Mr. Justice Cohen took no part in the decision of this case.