336 A.2d 282

**COMMONWEALTH of Pennsylvania**

v.

**Michael STEWART, Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 11, 1974.

Decided April 17, 1975.

---

Nicholas A. Clemente, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Michael Stewart was tried by a jury for the homicide of Ernest Hilton. The jury found appellant guilty of murder in the first degree and a sentence of life imprisonment was imposed. This appeal ensued.[1] We reverse the judgment of sentence and grant a new trial.

The only evidence introduced at trial of what transpired the night of the killing was appellant's statement to the investigating police officers and his own testimony at trial. According to appellant's statement, appellant came home from work and went to a neighborhood playground in West Philadelphia to drink wine with some friends. After drinking for a short time, he accompanied a companion to the companion's home where they procured a sawed-off shotgun, the weapon that fired the fatal shot. Thereafter, they returned to the playground. In the meantime, the Market Street Gang had come to the playground to negotiate a peace treaty with the Lex Street Gang of which appellant was a former member. Apparently, the negotiations broke down, a commotion began, and a cry went out that the Market Street Gang was "warring." Appellant continued his statement:

"Then I got up and was going across the field and somebody handed me the shotgun. 'Market Street' was jumping around in the field, saying something. And then I had the shotgun and I went over to the fence and I just shot. The shotgun jumped out of my hands and fell on the ground, and then I just left it and ran . . ."

Appellant's testimony at trial varied from his statement to the police. He testified that when the fracas began, the Market Street Gang jumped over a fence be-

1. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1974).

tween that gang and himself and charged in his direc-tion. Appellant claimed that he heard a member of that gang say, " 'Kill one of those motherfuckers.' " Appellant panicked, grabbed the shotgun and ran. As he ran the gun went off.

Appellant asserts that the trial court erred by ruling that testimony about the nature and extent of gang activity in appellant's West Philadelphia community was irrelevant.[2] Appellant argues that this evidence was relevant to establish that he lacked the intent required for a conviction of murder in the first degree.

■ Determination of the relevancy of evidence offered at trial requires a two-step analysis. It must be determined first if the inference sought to be raised by the evidence bears upon a matter in issue in the case and, second, whether the evidence "renders the desired inference more probable than it would be without the evidence[.]" McCormick's Handbook of the Law of Evidence § 185 (2d ed. E. Cleary 1972) (emphasis omitted); cf. *Commonwealth v. McCusker*, 448 Pa. 382, 388, 292 A.2d 286, 289 (1972).

In deciding whether in the present case the evidence offered by the defense meets the first test of relevancy, it is necessary to determine what issues were presented

2. Defense counsel put questions concerning gang activity in West Philadelphia to a number of witnesses. The officer who initially investigated the shooting was asked if he had investigated shootings in that area earlier in the summer in which Ernest Hilton's death occurred. In a sidebar conference, counsel told the court that he hoped to follow up this question and show that gang shootings were common in this area of West Philadelphia.

A member of the rival gang was asked about the extent of gang activity in the area, whether he carried deadly weapons into gang fights and if he had knowledge of other shootings in the area. Appellant's sister was asked if appellant had ever previously been shot in a gang incident before. Appellant was asked about his knowledge of gang violence in the neighborhood. Objections to these questions were sustained in each instance.

Appellant was permitted to state that he had suffered a gunshot wound once before in a gang incident and that he had been shot at a week prior to the killing.

at trial. Appellant neither denies that Ernest Hilton is dead nor that he fired the fatal shot. His sole contention is that he lacked the mental state required for a finding of first degree murder.

█ The Legislature has divided the crime of murder into two degrees. As relevant to this case, murder is of the first degree when it is "willful, deliberate, and premeditated." Act of June 24, 1939, P.L. 872, § 701, as amended by Act of December 1, 1959, P.L. 1621, § 1, 18 P.S. § 4701 (1963).[3] Our cases teach that a murder is willful, deliberate, and premeditated if it is committed by one who is conscious of his own purpose and intends to end the life of his victim.[4] If this state of mind is absent, a murder is murder in the second degree.

Appellant maintains that, at the moment of the shooting, he acted out of panic and terror and not with an intent to kill. He claims, therefore, that he could not be convicted of murder in the first degree.

██ Absence of the intent required for a particular degree of a crime, of course, precludes a conviction of that crime, although it may still be proper to convict of a lesser degree of the crime or of some included offense which does not require that intent. For at least a century we have held that a defendant may introduce evidence to prove factors existing prior to the homicide from which it may be inferred that at the time of the homicide he lacked the intent required for a conviction of murder in the first degree.

"[A]mple time for reflection may exist, and a prisoner may seem to act in his right mind, and from a con-

**3.** This Act was repealed and replaced by the Act of December 6, 1972, P.L. 1482, No. 334, § 1, which was in turn amended by the Act of March 26, 1974, P.L. ——, No. 46, § 4 (Pa.Legis.Serv. 260 (1974)) (to be codified as 18 Pa.C.S. § 2502).

**4.** *Commonwealth v. Hornberger,* 441 Pa. 57, 270 A.2d 195 (1970); *Commonwealth v. Ewing,* 439 Pa. 88, 264 A.2d 661 (1970); *Commonwealth v. Finnie,* 415 Pa. 166, 202 A.2d 85 (1964); *Commonwealth v. Gibbs,* 366 Pa. 182, 76 A.2d 608 (1950).

scious purpose; and yet causes may affect his intellect, preventing reflection, and hurrying onward his unhinged mind to rash and inconsiderate resolution, incompatible with the deliberation and premeditation defining murder in the first degree. When the evidence convinces us of the inability of the prisoner to think, reflect, and weigh the nature of his act, we must hesitate before we pronounce upon the degree of his offense."

*Jones v. Commonwealth*, 75 Pa. 403, 406 (1874). Thus it is accepted in this Commonwealth that intoxication, rendering the defendant incapable of forming an intent to kill, may preclude a conviction of murder in the first degree.[5]

 Although our research on this issue reveals no Pennsylvania case specifically holding that terror-stricken panic may negate the mens rea element of murder in the first degree, we are convinced that it may do so. Strong emotions have previously been found to prevent the formulation of the intent required for first degree murder. In *Commonwealth v. Bulte*, 443 Pa. 422, 279 A.2d 158 (1971), the appellant was accused of killing his wife. In determining whether after-discovered evidence warranted a new trial, the Court cited approvingly the trial court's instruction on murder in the first degree.

" 'Thus the law requires, and the jury must find the actual intent, that is to say, the fully formed purpose to kill, with so much time for deliberation and premeditation as to convince the jury that this purpose was not the immediate offspring of rashness or impetuous temper, and that the mind had become fully conscious of its own design.' "

Id. at 430, 279 A.2d at 162.

5. *Commonwealth v. Fostar*, 455 Pa. 216, 317 A.2d 188 (1974); *Commonwealth v. Mosley*, 444 Pa. 134, 279 A.2d 174 (1971); *Commonwealth v. Gwyn*, 441 Pa. 546, 272 A.2d 891 (1971).

In *People v. Caruso*, 246 N.Y. 437, 159 N.E. 390 (1927), the defendant, an illiterate immigrant, slayed a doctor. The defendant apparently believed that the doctor's malpractice had caused the death of his son and that the doctor had laughed when told of the death. Defendant was convicted of murder in the first degree. Justice Andrews, speaking for the New York Court of Appeals, concluded that the evidence was insufficient to support a verdict of murder in the first degree. Quoting an earlier New York decision, *People v. Barberi*, 149 N. Y. 256, 43 N.E. 635 (1896), the court said:

" 'If the defendant inflicted the wound in a sudden transport of passion, excited by what the deceased then said and by the preceding events which, for the time, disturbed her reasoning faculties and deprived her of the capacity to reflect, or while under the influence of some sudden and uncontrollable emotion excited by the final culmination of her misfortune, as indicated by the train of events which have been related, the act did not constitute murder in the first degree. Deliberation and premeditation imply the capacity at the time to think and reflect, sufficient volition to make a choice, and by the use of these powers to refrain from doing a wrongful act.' "

*People v. Caruso*, 246 N.Y. 437, 445–446, 159 N.E. 390, 392 (1927). See W. LaFave & A. Scott, Handbook on Criminal Law § 73, at 563–64 & nn. 15, 16 & 17 (1972).

If evidence of intense rage may be introduced to negate the existence of an intention to take the life of another, it follows that proof of any overwhelming emotion, such as panic, should be admissible for the same purpose.

Clearly appellant's state of mind was a matter in issue. The only remaining question is whether the evidence offered by appellant would render "the desired inference more probable than it would be without the evidence." McCormick, supra.

■ The only direct evidence of appellant's state of mind he could offer the jury was his own testimony. As a self-serving declaration, appellant's claim that he panicked was unlikely to be believed by the jury unless he could offer some evidence to corroborate his claim. In this case, virtually the only available corroborating evidence was testimony that gang wars in appellant's neighborhood were vicious and deadly. The testimony that appellant endeavored to elicit—that gang shootings had been frequent during the weeks preceding the deceased's death, that members of street gangs often carried deadly weapons into their battles, and that appellant himself had been once hospitalized by gang fighting—was relevant to establish the ferocity with which gangs clashed and therefore to raise an inference that panic and fear could be evoked by an incipient gang war. We hold that in excluding evidence of gang activity in appellant's neighborhood, the trial court withheld from the jury evidence of vital probative value to a determination of the defendant's state of mind.

In cases where a defendant attempts to justify a killing as done in self-defense, evidence of the deceased's violent predilections is relevant in determining the defendant's mental state at the time of the killing.[6] There is no reason why a defendant who is attempting to establish that as a result of terror-stricken panic he did not possess the mental state necessary for murder in the first degree should not be permitted to introduce evidence of

6. McCormick's Handbook of the Law of Evidence § 193 at 461 n. 99 (2d ed. E. Cleary 1972); 2 J. Wigmore, Law of Evidence § 248 (3d ed. 1940); see *Commonwealth v. Amos*, 445 Pa. 297, 284 A.2d 748 (1971); see also *Ruffin v. State*, 50 Del. 83, 123 A.2d 461 (1956); *Jones v. State*, 182 Md. 653, 35 A.2d 916 (1944); *Commonwealth v. Edmonds*, —— Mass. ——, 313 N.E.2d 429 (1974); *McMorris v. State*, 58 Wis.2d 144, 205 N.W.2d 559 (1973).

Of course, the relevancy of such evidence depends upon whether the defendant knew of the incidents in question. However, it may be inferred that if the incidents in question were common knowledge in the defendant's neighborhood the defendant had knowledge of them. Cf. 2 Wigmore, supra, § 246 at 52.

the deceased's violent nature. In the context of gang violence, the violent nature not only of the deceased, but also of the gang of which he was a member may be relevant to the inquiry into the defendant's state of mind, for his state of mind is related to the threat presented by group violence.[7]

Analysis of the working of the mind is a difficult and complex task. Physicians and psychologists may spend months or years probing the complexities of the mind before understanding the cause or motivation of a particular act. A jury, of necessity, must reach its decision on the state of a defendant's mind at the time of the act on the basis of a few hours of testimony. In this difficult endeavor, it is entitled to all the evidence bearing on this matter.

Recently, Mr. Justice Nix speaking for the Court in *Commonwealth v. Graves*, 461 Pa. 118, 126, 334 A.2d 661, 665 (1975), said:

"It would clearly be an anomaly to suggest that although the Commonwealth must establish the existence of a mental state beyond a reasonable doubt, and that failure to sustain the burden requires an acquittal; yet preclude the defendant from producing relevant evidence to contest the issue." (footnote omitted).

Similarly, in *Commonwealth v. McCusker*, 448 Pa. 382, 391, 292 A.2d 286, 290 (1972), we stated:

"Applying the established principles of relevancy to a murder prosecution where a defendant asserts that he acted in the heat of passion, it seems clear that any evidence—lay or psychiatric—pertinent to that defense should be admissible."

7. We are aware that the admission of such evidence is not without its problems. Evidence of the opposing gang's vicious and deadly practices may distract the jury from the issues and may appear to justify a deliberate killing. However, the proper response to these objections is not to exclude the evidence completely but to control the quantum of evidence admitted and to instruct the jury carefully as to its use.

The evidence appellant sought to place before the jury was relevant to appellant's defense, that he lacked the required intent for murder in the first degree, and should have been admitted for the jury's consideration.

Judgment of sentence reversed and a new trial is granted.

EAGEN, J., concurs in the result.

JONES, C. J., filed a dissenting opinion.

JONES, Chief Justice (dissenting).

I do not believe that the trial court erred in refusing to permit the introduction into evidence of prior gang activity in the area where the killing occurred. Yet even if that action of the trial court was error, such error, in my view, was harmless.