601 A.2d 277

**COMMONWEALTH of Pennsylvania**

v.

**Daniel W. ATWOOD, Appellant.**

Superior Court of Pennsylvania.

Argued May 15, 1991.

Filed Oct. 8, 1991.

Reargument Denied Dec. 11, 1991.

See also 378 Pa.Super. 21, 547 A.2d 1257; 401 Pa.Super. 638, 577 A.2d 647.

140

Mark H. Rubenstein, Pittsburgh, for appellant.

Andrea McKenna, Deputy Atty. Gen., Harrisburg, for Com., appellee.

Before CAVANAUGH, DEL SOLE and CERCONE, JJ.

DEL SOLE, Judge:

Appellant, Daniel Atwood, was found guilty after a sixteen day jury trial of six counts of Theft by Deception, three counts of Perjury, and one count each of False Swearing and Theft by Failure to make Required Disposition of Funds. Appellant was sentenced to an aggregate term of six to eighteen years in confinement followed by a term of two years probation. The essence of the theft convictions is Appellant's fraudulent acquisition of funds from participants in his evangelical revival in Erie County, Pennsylvania. The perjury and false swearing convictions arose from his statements before a statewide grand jury.[1]

Appellant raises six issues for our review. Upon review of these claims, we determine that it is necessary to award Appellant a new trial on all counts except Count Ten, which we dismiss. We will discuss each issue *seriatim*.

First, Appellant claims that the trial court erred in denying his pre-trial applications to quash the indictment on the basis that the statewide grand jury was improperly used and the attorney general superseded his statutory authority.

Chief Justice Nix ordered the impaneling of the Fourth Statewide Grand Jury pursuant to the Investigating Grand Jury Act, [Act], 42 Pa.C.S.A. § 4541 *et seq.* Section 4544 provides in pertinent part that a multi-county investigating grand jury may be convened by the Supreme Court of

---

**1.** We note that the procedural history of this case is somewhat irregular. On direct appeal from the January 8, 1988 judgment of sentence, a panel of this court dismissed the appeal for failure to file a concise statement of matters complained of on appeal. *Commonwealth v. Atwood*, 378 Pa.Super. 21, 547 A.2d 1257 (1988). Subsequently, this court reversed the denial of a petition for post-conviction relief and held that Appellant should file a 1925(b) statement *nunc pro tunc* within 14 days of the remand of the record, and "may thereafter proceed with a direct appeal *nunc pro tunc*." We also relinquished jurisdiction. *Commonwealth v. Atwood*, 401 Pa.Super. 638, 577 A.2d 647 (1990) (mem.).

In light of the fact that it was not clearly stated when Appellant should properly file his appeal, or indeed if a new appeal need be filed at all, we hold that the appeal was timely filed, and thus, we will reach the merits on the issues raised.

Pennsylvania upon application of the Attorney General who shall state that such grand jury is necessary to investigate organized crime or public corruption or both involving more than one county. In the instant application for the Fourth Statewide Grand Jury, the Atwood investigation was not mentioned.

However, subsequently, the Attorney General submitted the Atwood investigation to this grand jury alleging *inter alia* that a concerted scheme operated by Daniel Atwood occurred and is occurring in Erie, Venango and Fayette Counties. This submission was made pursuant to 42 Pa. C.S.A. § 4550 which requires that the Attorney General submit a notice to the supervising judge alleging that the matter in question should be brought to the attention of the investigating grand jury because the investigative resources of the grand jury, [such as its subpoena power], are necessary for a proper investigation.

Appellant claims that the Attorney General did not have the authority to submit the instant investigation to the statewide grand jury because the investigation did not concern organized crime or public corruption, and it involved only one county, Erie County. In other words, Appellant argues that section 4544 not only limits the jurisdiction of a multi-county grand jury, but all subsequent submissions to the grand jury must meet this jurisdictional predicate for subject matter. We disagree.

It is settled law that the Act permits the impaneling of an investigating grand jury without specific reference to the criminal activity or activities to be investigated. *In re County Investigating Grand Jury of October 18, 1982,* 501 Pa. 118, 460 A.2d 249 (1983). Further, the exercise of judicial discretion with respect to the impaneling of an investigating grand jury is limited to a determination of whether the allegations of the district attorney in the application for impaneling are facially adequate in terms of the Act. *In re: Investigating Grand Jury of Philadelphia County (Appeal of Washington),* 490 Pa. 31, 39, 415 A.2d 17, 21 (1980).

■ In the instant case the allegations in the application for a statewide grand jury were facially adequate in terms of the Act. Further, because other cases may be brought before the Grand Jury after it has been impaneled, the Atwood investigation need not have been mentioned in the original application for impaneling.

Moreover, we agree with the following statement by the trial court:

This court notes, significantly, that the allegations of multi-county activity were made in good faith and the appellant has neither offered nor even alleged anything to the contrary. The fact that, post hoc, all the appellant's criminal activity was revealed to be in one county will not shield the defendant from criminal prosecution. The only alternative to the present ruling would be to quash each and every indictment of a multi-county grand jury when the defendant's criminal activities are later revealed to have occurred in only one county. This would be ludicrous. (Trial Court Opinion at 9).

We have recently held that, "where properly impaneled, the purpose for which a grand jury is convened does not restrict the grand jury from investigating actions which constitute criminal activity or probable violations of the criminal laws of the Commonwealth." *Commonwealth v. McCauley,* 403 Pa.Super. 262, 588 A.2d 941 (1991). Rather, all that need be alleged in an application for submission of an investigation to any grand jury, county or multi-county, is that the matter in question requires the investigative resources of the grand jury. 42 Pa.C.S.A. § 4550.

Given that the powers or investigative resources of any investigative grand jury, multi-county or county, are governed by the same statute, 42 Pa.C.S.A. § 4548 (Powers of investigating grand jury), and that the application for submission of the Atwood investigation to the Fourth Statewide Grand Jury alleged that its investigative resources were necessary for a proper investigation, the Attorney General and the grand jury were within their statutory authority to investigate the allegations concerning Mr. At-

wood. We therefore decline to quash the information issued by the grand jury.

Appellant next contends that the statute of limitations had run on counts three and nine of the information. He argues that the crimes charged in these counts occurred prior to July 12, 1982, and therefore the "new" statute of limitations which became effective on that date was inapplicable, 42 Pa.C.S.A. § 5552(b), *as amended by* P.L. 417, No. 122, § 1 (1982). Under the "old" statute, 42 Pa.C.S.A. § 5552(a), (c), the Commonwealth was obliged to commence prosecution within two years of the commission of the theft, or file a complaint within one year of the discovery of the crime. Appellant alleges that because the Commonwealth failed to file a complaint within one year of the discovery of the crime in 1983, and instead waited until November of 1986, the statute of limitations had run. Furthermore, because the crimes were committed prior to July 12, 1982 the Commonwealth could not avail itself of the new five year statute of limitations as it relates to theft offenses.

Count Three charged Appellant with theft by deception from Mr. William Gouron of both $2,000 and a valuable ring. Although the exact date of the theft was not established during trial, when Mr. Eugene Kennet was asked whether he was present in August of 1982 when the money and the ring were loaned to Appellant, he replied affirmatively. (N.T. July 15, 1987, p. 124) This testimony was sufficient to establish that the crime occurred in August, and therefore the "new" statute of limitations was applicable. Therefore, the limitation period had not run on this count before a complaint was filed.

Count Nine charged Appellant with theft by failure to make required disposition of funds received. The testimony on when this occurred was contradictory, but the cashier's check was dated July 20, 1982, and the victim, Carol Sherwood, testified that she handed it over to Appellant the same day it was issued. (N.T. July 13, 1987, pp. 14–17). We find that the evidence was sufficient to establish that the theft occurred after July 12, 1982, and the "new"

statute of limitations was applicable. Therefore, the information on this count was timely filed.

■ Next, we must consider Appellant's claim that the trial court erred in admitting irrelevant and prejudicial testimony concerning Appellant's "lifestyle." This included testimony concerning Appellant's adultery and the lavish gifts he showered on his paramour, his gambling, membership in expensive clubs, ownership of expensive cars, etc. Appellant argues that the minimal probative value of this evidence in establishing a motive to defraud, was greatly outweighed by the prejudicial effect of the evidence, and that based on the ruling in *Commonwealth v. Haight*, 514 Pa. 438, 525 A.2d 1199 (1987), a new trial is required.

In *Haight*, the defendant was convicted of burglary, criminal trespass and criminal mischief following a jury trial. In the course of cross-examining the defendant's girlfriend, she testified, over objection, that the defendant was unemployed and was receiving public assistance. The Commonwealth urged that the evidence of income was relevant and admissible to prove a motive for the burglary, and if it was inadmissible it was harmless error.

The *Haight* court cited *Commonwealth·v. Stewart*, 461 Pa. 274, 278, 336 A.2d 282, 284 (1975), for the principle that evidence is relevant when "the inference sought to be raised by the evidence bears upon a matter in issue in the case and, second, whether the evidence renders the desired inference more probable than it would be without the evidence." *Id.*, 514 Pa. at 440, 525 A.2d 1199, it held that the testimony concerning Haight's income was irrelevant and rejected the "motive" argument as merely accentuating the propensity of the accused to commit a crime rather than demonstrating an intent or reason to commit a specific act charged. *Id.*, 514 Pa. at 442, 525 A.2d 1199. In other words, it held that poverty or lack of income was inadmissible evidence to establish a motive for committing a crime such as burglary or criminal trespass. In concurrence Justice Papadakos cited the following statement from 2 Wigmore, Evidence § 392, "Undoubtedly a lack of money is logically connected

with a crime involving financial gain. The trouble is that it would prove too much against too many." *Id.,* at 514 Pa. 443, 525 A.2d 1199 (Papadakos, J., concurring). Therefore, although the defendant's lack of money and financial needs were logically relevant in establishing motive, they were legally irrelevant.

Furthermore the *Haight* court held that the admission of this evidence was not harmless error. The defendant claimed he had an alibi for the time of the burglary and the alleged co-conspirator and his wife testified that he was a participant in the burglary. There was no eye-witness or real evidence linking him to the burglary, and therefore the trial turned on the credibility of the witnesses including defendant. The court held that the introduction of this inadmissible evidence cannot be deemed harmless, since this evidence would reflect upon Haight's credibility.

Although, ostensibly, the *Haight* court did not employ a traditional balancing analysis, balancing the minimum probative nature of the testimony against its prejudicial effect, in actuality its harmless error analysis was a finding that the prejudicial nature of this testimony, given that this was a case which rested on the credibility of the witnesses, had greater weight than the probative value of this evidence in establishing a motive for the crime.

In *Commonwealth v. Wax,* 391 Pa.Super. 314, 571 A.2d 386, 388 (1990), evidence was admitted concerning the appellant's indebtedness, including rent owed, gambling debts, and payments on a Mercedes car which was eventually repossessed. The appellant was convicted of attempted theft by deception for submitting a fabricated insurance claim, and it was shown that at the time Appellant filed his insurance claim his gambling debts were roughly equal to his claim. On appeal, Mr. Wax claimed that this evidence was barred by *Haight.*

However, we held that, *"Haight* cannot be construed as creating an absolute bar to the admission of all evidence of financial difficulties." *Id.,* 571 A.2d at 388. In distinguishing *Haight* from *Wax,* we stated:

*Haight* easily is distinguished from the instant case. Here, evidence of appellant's debts was specific and substantial and from it the jury could infer appellant's motive or state of mind to commit a crime, especially where the crime was strictly an economic one. Moreover, no general prejudice such as that present in *Haight* can be asserted because evidence of the debts clearly was not intended to stigmatize appellant on the basis of his economic status. Since *Haight* does not dictate the result appellant suggests, this court should assess the admissibility of the disputed evidence under traditional considerations of relevancy. *Id.*

Consequently, a traditional relevancy analysis was applied, and the court used, "a common sense evaluation of the disputed evidence and an inquiry into whether the probative value of the evidence exceeds its prejudicial impact," *Id.*, 571 A.2d at 389. It held that the evidence was admissible, based on the findings that the evidence of Appellant's immediate financial liabilities was both specific and substantial, and that the crime was a strictly economic crime. Therefore, the jury was not asked to speculate on a weak chain of inferences which would not have been probative of the motive for committing the crime. In conclusion, the *Wax* court found that the probative value of this evidence clearly outweighed the prejudicial effect of evidence which did not raise problems of stigma and unfairness such as those implicated in *Haight.*

The instant case falls somewhere between *Haight* and *Wax.* On the one hand we find that the contested "lifestyle" testimony concerning Appellant's adultery and extravagance was, like the *Haight* testimony, both stigmatizing and inherently prejudicial. However, the element of unfairness which arises when poverty is considered to be a motive for committing a crime, is missing. After all, here the inferences of motive arose from Appellant's own conduct and behavior rather than from an unfortunate situation such as unemployment or financial need.

As in *Wax*, Rev. Atwood was convicted of a strictly economic crime, theft by deception and improper disposition of funds. These crimes involve the creation of a false impression as to "law, value, intention or other state of mind." 18 Pa.C.S.A. § 3922(a)(1). The Commonwealth must often rely on words, *conduct*, or circumstances to infer an intent to defraud. *Commonwealth v. Feldman*, 243 Pa.Super. 408, 365 A.2d 1289 (1976). In consequence, we find that the chain of inferences is not too attenuated from Appellant's conduct in lavishing gifts on a paramour, when the funds were given to him for "the Lord's work," to the fraudulent intent involved in misusing funds received and intentionally failing to repay loans.

Although, unlike *Wax*, the evidence did not establish the exact amount spent by Appellant on his "lifestyle," nor did it establish that the loans or gifts received in support of Appellant's ministry exactly matched the amount he spent outside his ministry, the evidence did show that his "lifestyle" was lavish, requiring substantial funds for its maintenance, and that substantial funds were received from his followers.

Like *Haight*, this case rested on the credibility of the Appellant who contradicted the testimony of Commonwealth witnesses concerning such questions as whether the money received by Appellant was a loan or a gift, whether Appellant told other witnesses he had no intention of paying back the loans, and whether he promised to use donations for specific purposes. However, after weighing the probative value of this evidence as against its prejudicial effect on Appellant's credibility, we cannot say that the trial court committed a manifest abuse of discretion in admitting such evidence. *Commonwealth v. Lumpkins*, 324 Pa.Super. 8, 471 A.2d 96 (1984). We therefore affirm the trial court on the issue of the admissibility of evidence concerning Appellant's "lifestyle."

Next, Appellant claims that the trial court erroneously admitted information concerning the impact of his crimes on the lives of some of the victims. He argues that this

evidence was unduly prejudicial without the requisite probative value. We will separately consider the contested testimony of the witnesses in order to assess its admissibility.

 First, Appellant objects to that part of the prosecutor's opening remarks in which he stated that six of the eight victims were women who were either widows or separated from their husbands, and that as a result of Appellant's non-payment on the loans they lost their life savings, retirement benefits, and death benefits. Appellant claims that the admission of these remarks, over objection, was error because they were designed solely to evoke sympathy, while having little if any probative value.

The trial court ruled that the remarks concerning the source of these funds and the financial circumstances of these individuals was relevant to refute Appellant's claim that the funds received were gifts and not loans to Appellant's ministry, and to show the unlikelihood that such individuals would make such large gifts. Given the probative value of this information, and the small probability that the "unavoidable effect [of these remarks] would be to so prejudice the jury against the accused and prevent the finding of a true verdict," we find that the court did not err in overruling the Appellant's objection. *Commonwealth v. Galloway*, 302 Pa.Super. 145, 448 A.2d 568 (1982).

Next, Appellant argues that it was impermissible to ask a question of a witness, Ms. Josephine Sorozak, which was answered affirmatively, whether as the result of her loan of $30,000 to Appellant, her retirement policy was depleted. (N.T. July 8, 1987, at p. 104) We need not reach the merits of this contention, because there was no contemporaneous objection to this question or to the answer, and therefore the issue is now foreclosed from appellate review. *Commonwealth v. Hubble*, 314 Pa.Super. 99, 460 A.2d 784, 789 (1983).

For similar reasons of waiver, we need not address whether the testimony elicited from Ms. Carol Sherwood, that she was an unemployed widow with five minor chil-

dren, and that she had little money left from her husband's death benefits because Rev. Atwood failed to pay back the loan, was admissible. (N.T. July 13, 1987, at pp. 10, 12–13).

Next Appellant claims that the testimony concerning the financial plight of the witness, Ms. Bernita Anderson, was irrelevant and prejudicial. We disagree. This evidence was relevant to prove why Mrs. Anderson and her husband phoned Appellant in Florida asking for repayment, and why when Appellant flew to Maine they accepted $3,000 and signed a release absolving Appellant of further financial liabilities. The court did not err in admitting this testimony. (N.T. July 13, 1987, at p. 185).

The Commonwealth was also permitted to establish that Ms. Carol Sherwood had to re-negotiate a loan with her bank and pay more interest because Rev. Atwood failed to repay within the time promised. The trial court states that the evidence of the financial consequences of Appellant's acts was relevant to prove damages as required under *Commonwealth v. Walentoski*, 300 Pa.Super. 559, 446 A.2d 1300 (1982).

However, *Walentoski* does not discuss the issue of proving damages. Rather, this case held that the Commonwealth has the burden of producing evidence of the value of the goods stolen, in order to establish the grade of the offense. *Id.*, 300 Pa.Super. at 565 n. 2, 446 A.2d 1300. Here the amount of the loan made to Appellant was at least $9,000, without including any additional interest from refinancing, and Appellant was charged on this count of Theft by Deception as a felony of the third degree. Theft by Deception constitutes a felony of the third degree if the amount involved exceeds $2,000. (18 Pa.C.S.A. § 3903(a)). Therefore, it was unnecessary to introduce evidence of the loan re-negotiation and the increased interest payments in order to establish the grade of the offense. Appellant argues that a new trial is warranted because the introduction of this evidence served only to prejudice Appellant's right to a fair trial by evoking sympathy for Ms. Sherwood, without providing any probative evidence.

Although we agree that it was error to admit this evidence, as it did not serve to establish the grade of the offense, we believe that the introduction of this evidence was harmless error. Harmless error has been defined as one which *could not have contributed to the verdict. Commonwealth v. Baldwin,* 282 Pa.Super. 82, 422 A.2d 838 (1981).

Appellant's conviction on this count of Theft by Deception, could not have been influenced by the improper admission of this evidence. The prejudice inherent in evidence showing that Ms. Sherwood was forced to pay more interest on the loan she took out to cover money she loaned Rev. Atwood, is minimal, given the amount of the increased interest as compared to the original $9,000 loan. We therefore will not reverse Appellant's conviction on this count.

Lastly, Appellant argues that it was error to allow Ms. Laura Nickell to testify that she and her husband loaned him $1,000 and that the check he gave as repayment bounced. Appellant contends that this evidence was irrelevant because he was not charged with any criminal offense in connection with Ms. Nickell and it was irrelevant to any issue in the case. We disagree.

The testimony concerning this check to Ms. Nickell was relevant in two ways. First, it showed how Rev. Atwood generally disregarded his obligations and avoided his debts. He not only gave Ms. Nickell a check which was returned for insufficient funds, but he refused to pay her after the check bounced. She and her husband had to force an embarrassing confrontation with him in a public place on two occasions, and to follow him until he made payment on the check. This is relevant to the issue of intent not to pay back his loans, which is often difficult to prove directly, requiring the Commonwealth to rely on circumstantial evidence of words or conduct. *Commonwealth v. Bentley,* 302 Pa.Super. 264, 448 A.2d 628 (1982).

Secondly, Ms. Nickell's check was not made out to Rev. Atwood, but to WSEE–TV, the local television station where

Rev. Atwood broadcast his ministry. Testimony concerning this check was important in establishing that the funds received by WSEE–TV in payment for Rev. Atwood's air time, roughly $1,000 in the relevant time period, came from the Nickells, not from Ms. Carol Sherwood. For the purposes of establishing Theft by failure to make required disposition of funds, a charge made in connection with Appellant's failure to use Ms. Sherwood's funds for his televised ministry, the evidence concerning this check tended to prove that none of Ms. Sherwood's gift was used for payments to the television station.

Therefore, for the reasons stated above, we hold that a new trial is not required because of the testimony received concerning the impact of Appellant's actions on the lives of these individuals who gave or loaned money to his ministry.

Next, Appellant contests the sufficiency of the evidence to sustain convictions for Theft by Deception, Theft by Failure to make required disposition of funds, and perjury. He does not contest his conviction for false swearing on this ground. We must examine the ten challenged convictions separately.

Appellant claims there was insufficient evidence to support his conviction for Theft by Deception in connection with a loan that he obtained from Ms. Cynthia Carr in the amount of $1,000. Ms. Carr testified that Appellant told her he would repay the money prior to the loan coming due, and when the victim tried to contact Appellant at the phone number he gave her, she learned the number was no longer in service. Moreover, he never attempted to contact her after the loan became due. Viewing the evidence, as we must, in the light most favorable to the Commonwealth, and drawing all inferences in the Commonwealth's favor, we find that the jury could determine beyond a reasonable doubt that Appellant had obtained the loan by deception intending not to pay it back. *Commonwealth v. Peduzzi*, 338 Pa.Super. 551, 556, 488 A.2d 29 (1985); *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976).

■ At count three of the information, on the charge of Theft by Deception, Appellant was charged with obtaining a ring valued at $3,000 and $1,000 cash from a Mr. William Gouron, and creating a false impression that he would return the ring and/or repay this victim. There was testimony from two witnesses to the loan transaction, the value of the ring, and to the fact that Appellant was asked to repay and return the ring. Furthermore, there was testimony concerning the fact that Appellant borrowed the ring for use on one of his broadcasts, and then he pried out the stones from the ring and had them reset in another ring.

■ Testimony of the victim as to the defendant's acts or the surrounding circumstances, if believed, is sufficient to prove the element of intent. *Commonwealth v. Quartapella*, 372 Pa.Super. 400, 539 A.2d 855 (1988). Here, there was testimony from two witnesses, and one was present both when the loan was obtained and when the request was made for the return of Mr. Gouron's property. Therefore, the evidence was sufficient to convict Appellant on this count.

■ Counts five and seven of the information concern transactions involving Ms. Carol Sherwood. Count five charges that Appellant intentionally created a false impression that he would repay a $10,000 loan obtained from Ms. Sherwood, and therefore was guilty of Theft by Deception. Appellant argues that because Ms. Sherwood did receive partial payment on the loan in the amount of $3000, and because he acknowledged before and during trial that the $10,000 was a loan, there was insufficient evidence to show that Appellant never intended to repay the loan. Rather, he argues, he was simply financially unable to make full payment in a timely manner.

We disagree. Appellant repeatedly failed to return any of Ms. Sherwood's phone calls, and it was only after the Attorney General's office had begun investigating Appellant and had interviewed Ms. Sherwood in connection with this investigation, that Ms. Sherwood received partial repay-

ment in the mail, along with a letter promising to keep in closer contact with her in the future. No further monies were ever repaid to Ms. Sherwood by the time of trial in 1987. (N.T. July 13, 1987, at pp. 24, 65.) Furthermore, a witness testified that Rev. Atwood told him, at or near the time he secured the loan, that he had no intention of repaying the loan to Ms. Sherwood. (N.T. July 9, 1987, at p. 275.)

We find that in viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence for the jury to conclude that the only reason that Appellant did make partial repayment was because he knew he was being investigated and feared the consequences, and that he was guilty of Theft by Deception because he had no intention of repaying Ms. Sherwood at the time he obtained the loan from her. *Peduzzi, supra,* 338 Pa.Super. at 556, 488 A.2d 29.

 Count 9 charges that Appellant failed to make the required disposition of the $5,000 received from Ms. Sherwood for use in buying air time on a local television station. 18 Pa.C.S.A. § 3927 provides in pertinent part:

**Theft by failure to make required disposition of funds received**

**(a) Offense defined**—A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition.

We find that the Commonwealth proved beyond a reasonable doubt that the Appellant obtained the funds from Ms. Sherwood subject to a known obligation to use it for buying air time on WSEE–TV, and that he intentionally used the money for other purposes. Testimony from Ms. Sherwood showed that she gave him $5,000 to buy air time, and an

employee of the television station testified that he received only $1,000 in payment. Furthermore, Ms. Nickell's testimony tended to show that the funds the station did receive came from her check made out directly to the station. We therefore find there is no merit to Appellant's claim of insufficiency.

In Count Six, Appellant was charged with Theft by Deception in connection with Ms. Wanda Olson, who loaned Rev. Atwood $2,000. The facts are substantially similar to those in Ms. Sherwood's case in that no money was repaid despite numerous phone calls and attempts to reach Rev. Atwood. Subsequently, Ms. Olson received $1,000 by mail in repayment after the investigation of Appellant was underway. Furthermore, despite Appellant's contention to the contrary, Ms. Olson was never repaid in full because he stopped payment on one of the checks she received from him. (N.T. July 10, 1987, at p. 492.) For the reasons discussed above in connection with Appellant's conviction for Theft by Deception as regards Ms. Sherwood, we find no merit to Appellant's claim of insufficiency of the evidence to convict on this count of Theft by Deception.

Next, Appellant claims there was insufficient evidence to convict him of Theft by Deception from Mr. Alan Gates who was a parishioner at the Interfaith Worship Center in 1982 when Rev. Atwood conducted his revival there. We find no merit to Appellant's claim concerning this count of the charge.

The final count of Theft by Deception concerns moneys given to Rev. Atwood by Ms. Anna Gates, the mother of Mr. Alan Gates. Appellant urges that this conviction should be set aside because Mrs. Gates specified that the money need not be paid back so long as Atwood continued to do the Lord's work and because Mrs. Gates made no demand for repayment of the principle of the loan, although she did demand repayment of the interest.

Although, we agree that on this count there is insufficient evidence to show that the money obtained from Ms.

Gates was a loan rather than a gift, given that she told an investigator from the Attorney General's office that she would not be too upset if she did not get the money back as long as the money was used for the Lord's work, (N.T. July 10, 1987, at p. 492), we still find that Appellant obtained the moneys from Ms. Gates by deception.

Rev. Atwood told Ms. Gates that he needed $5,000 from her to buy TV air time. (N.T. July 10, 1987, at p. 472; July 9, 1987, at p. 275), and in fact Ms. Gates gave Rev. Atwood a total of $6,500, after taking out a loan at her bank on July 26, 1982. The sales manager of the television station testified that the total amount received by the television station after July 20, 1982 was $1,020, and that Rev. Atwood never made a single payment at any time of $5,000. (N.T. July 14, 1987, at pp. 121–124.) This testimony was sufficient to prove that Appellant intentionally deceived Ms. Gates when he obtained these funds from her.

Theft by Deception entails the intentional creation of a false impression as to law, value, intention to perform a promise, or other state of mind, at the time a person obtains the property of another. 18 Pa.C.S.A. § 3922(a)(1). We hold that there was sufficient evidence to prove that Appellant intentionally deceived Ms. Gates when he promised to use the money obtained to buy television air time, and therefore there is no merit to Appellant's claim that this count should have been dismissed.

Appellant was also convicted of various counts of perjury (Counts 10, 12, and 16) stemming from his testimony before the Fourth Statewide Grand Jury. The offense of perjury is defined in 18 Pa.C.S.A. § 4902(a):

(a) **Offense defined.**—A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.

■ Appellant was convicted of perjury in Count 10 of the information for stating that he never received any funds from Anna Gates with the understanding that he was to repay said funds as a loan, when said statement was material and said actor did not believe it to be true. Appellant contends there was insufficient evidence to support his conviction on this count because the Commonwealth did not prove beyond a reasonable doubt that he did not believe his statement to be true.

We have stated that a subjective belief is especially difficult to prove, and of necessity such proof relies to a great extent on the circumstantial evidence presented by the Commonwealth. *Commonwealth v. Spennato*, 318 Pa.Super. 532, 537, 465 A.2d 681 (1983). Under the circumstances presented here, it cannot be said that the Commonwealth has sustained its burden of proving beyond a reasonable doubt that Appellant knew his answer to be false.

Here, in effect, the crucial question was whether when Appellant told the grand jury that the monies received from Ms. Gates were a gift not a loan, he knew this statement to be false. We hold that it was not unreasonable for Appellant to take Ms. Gates statement that, "she would not mind if he didn't repay her as long as he continued to do the Lord's work," to mean that she was making a gift to him for use in his evangelical ministry.[2] We can not find that the Commonwealth proved beyond a reasonable doubt that Appellant knew his statement to the grand jury was false.

2. On page 2 of his dissenting opinion, Judge Cavanaugh writes, "My colleagues place undue emphasis on a statement supposedly made to an investigator from the Attorney General's office by the victim that, 'she would not mind if he didn't repay her as long as he continued to do the Lord's work' ". We note that Ms. Gates not only told this to the investigator, but she admitted under cross-examination at trial that she had said this to Rev. Atwood at the time she gave him the loan. (N.T. at 282, July 7, 1987). Therefore, it was not an isolated statement of Ms. Gates intentions made to a third party on one occasion, but was conceded at trial by Ms. Gates. Furthermore, a close look at the Rev. Kennett's testimony (N.T. at 107, July 15, 1987), reveals that he does not contradict Ms. Gates on this issue, while Jay Atland's testimony is an opinion without any factual basis in the statements of either Rev. Atwood or Anna Gates. (N.T. at 282, July 9, 1987).

Therefore, we dismiss this conviction on the basis of the insufficiency of the evidence.

■ Next, Appellant claims that the evidence was insufficient to sustain a conviction of perjury in regard to his testimony that the $30,000 received from Mrs. Sorozak was a gift not a loan. He argues that the trial testimony of Mrs. Sorozak was contradicted by another witness, Earl Swain, who also testified that agents of the Attorney General of Pennsylvania attempted to have him state that the transaction he witnessed between Appellant and Mrs. Sorozak was a loan. This contradiction, he contends, coupled with prosecutorial overreaching rendered the evidence wholly insufficient to establish that Appellant's statement was false. Furthermore, he argues that even if the statement were false, it was immaterial because the transactions occurred in Ohio and were not part of the grand jury investigation in Pennsylvania, and that the transaction was so vague that there was insufficient evidence to prove that Appellant had a subjective belief that the transaction was a loan.

We find no merit to these contentions. Both Mrs. Sorozak and her daughter Cathy Leiphart testified that the funds given Rev. Atwood were a loan not a gift, and the jury chose to believe them over Earl Swain and Appellant. Determinations concerning the credibility of witnesses are solely within the province of the jury, and a mere conflict of testimony does not render a verdict insufficient. *Commonwealth v. Evans*, 299 Pa.Super. 529, 533, 445 A.2d 1255 (1982).

Furthermore, "the test of the materiality of a false statement is whether it can influence a fact-finder, not whether it does." *Commonwealth v. Lafferty*, 276 Pa.Super. 400, 406, 419 A.2d 518 (1980). When Rev. Atwood appeared before the grand jury the focus of the grand jury's investigation was whether Atwood had fraudulently obtained monies from his followers. Testimony relevant to his course of conduct in conducting his itinerant ministry in other locations could have affected the outcome of the grand jury

proceedings. Therefore the testimony at issue was material.

Finally, we find nothing vague in the testimony of Mrs. Sorozak or her daughter, from which we might conclude that Rev. Atwood could have reasonably believed in the truth of his statement that the monies received were a gift not a loan. Therefore the trial court properly upheld the conviction.

As to Appellant's challenge to the sufficiency of the evidence to convict him of perjury as regards his statement to the grand jury that he never received any funds from William Gouron with the understanding that he was to repay said funds, we find no merit to his argument and hold that the trial court properly upheld that conviction.

■ Next, Appellant claims that the trial court erred in refusing to allow the testimony of several defense witnesses, fellow ministers, who would testify, *inter alia,* to various matters concerning Rev. Atwood's religious beliefs and business practices, as well as the average expenses of travelling ministers. The Commonwealth objected to this testimony and requested an offer of proof. The offer of proof was given at an extensive sidebar, and it was the defense position that these witnesses were the "heart and soul" of the defense.

The offer of proof was essentially that these ministers were itinerant, evangelical ministers with independent churches, and had been so for many years. The defense contended that Rev. Atwood's religious beliefs were contrary to the beliefs of most if not all of the jurors, and that it was necessary to have the testimony of these ministers with similar religious beliefs, and who knew Rev. Atwood because they had participated in revivals with him, in order to acquaint the jurors with the tenets of this religion. This was essentially expert testimony on evangelical religious practices and methods of fund raising. More specifically, in order to establish the legitimate reasons for Rev. Atwood's fund-raising efforts in the form of loans and gifts, these

witnesses were prepared to testify on the high expenses of a travelling ministry including television costs, salary costs, and road expenses. This evidence would also be offered to refute the Commonwealth's position that Atwood's "life style" expenses were the motive for the alleged crimes.

In order to establish that Appellant intended to repay the loans, and therefore refute the Commonwealth's evidence of fraudulent intent, these witnesses' testimony was also offered to prove that it was within customary practice among evangelists to borrow money to keep the ship afloat, and sometimes they would be unable to repay these loans in a timely manner due to an inability to raise the proper funds. They would also testify that Rev. Atwood in the past had obtained loans from individual parishioners to keep his ministry going in periods when there were financial difficulties, and that these loans had been repaid. (N.T. July 21, 1987, pp. 82–120). The defense contended:

The primary thrust of his [Rev. Loudermilk's] testimony would be that in his experience as a minister in conducting his own ministry that on many occasions he requested parishioners, people who had given contributions in the past to make loans to his ministry. Because of the evident [sic] flow of cash within these evangelical ministries, there are times that it is required or necessary to keep the ship afloat to take out loans and often individuals are approached and often those individuals are not repaid within the time promised because they are not able to raise the money. The only way they can repay individuals is raising the funds by other means, and that is an accepted, common, customary practice, not individual to Reverend Atwood or to Reverend Loudermilk, but that is an accepted practice in the evangelical field. And that is of primary importance, that is the defense in this case. (N.T. July 21, 1987, at p. 88).

The court excluded the testimony of these witnesses on the basis that, (1) the proffered testimony was beyond the scope of witnesses' qualifications, in that in the nature of the industry it would be very difficult to ascertain with any

degree of certainty what are average or reasonable expenses, and (2) the testimony was "totally irrelevant to any issue before the court." (Trial Court Opinion at 25–26).

In support of its contention that the witnesses were not qualified to testify on such matters as the average and reasonable expenses in this industry the trial court cites *Commonwealth v. Henry*, 524 Pa. 135, 569 A.2d 929 (1990). In that case the defendant in a murder trial was not permitted to introduce evidence of a videotape of a person who suffered from an alcohol provoked condition. The court held that the conditions depicted in the videotape were too dissimilar from Appellant's physical and mental condition on the night of the crime. "The law is clear that experimental evidence is admissible only if the conditions under which the experiment was conducted are substantially similar to those at the time of the event in question." *Id.*, 569 A.2d at 936.

In the instant case the evidence sought to be admitted was not "experimental" evidence, but evidence from ministers who were similarly situated in terms of their type of employment and ministry. More importantly, unlike a videotape, these ministers would be subject to cross-examination, in which their claimed knowledge of the ordinary expenses of such ministries, and the similarity of their ministries as compared to that of Rev. Atwood could be attacked and discredited.

We also disagree that this testimony was totally irrelevant to any issue before the court. The relevancy of this testimony is especially clear on the issue of Appellant's intent. To be guilty of Theft by Deception, it is not enough that Appellant be unable to repay the moneys owed, but rather his intention must be not to repay the loans at the time the moneys changed hands. This intention is a matter of proof. *Commonwealth v. Peduzzi*, 338 Pa.Super. 551, 488 A.2d 29 (1985). We have long held that as an aid to the jury, we will admit testimony which establishes a state of mind, or intent, at the time of the crime. *Commonwealth v. McCusker*, 448 Pa. 382, 391, 292 A.2d 286 (1972).

The evidence offered by the defense, that evangelical ministers operate with little or no capital in reserve, relying on a steady stream of loans or gifts donated by followers of the ministry, was probative of whether Appellant intended to pay back his loans, but was merely unable to do so because of an inability to raise the required funds.

We also note that earlier in the trial, evidence was introduced, *favorable* to the Commonwealth, on the practices of evangelical ministries. In particular Ms. Sherwood stated that her church in Erie had hosted other revivals prior to Rev. Atwood's, and that she had never loaned those revivalists any money. (N.T. July 13, 1987 at p. 71).

In refusing to admit this testimony from the ministers, the trial court stated *inter alia:*

THE COURT: How can an accepted practice in a field make a crime not a crime, or make something that was not a crime a crime. (N.T. July 21, 1987, at p. 89).

THE COURT: Let me put it to you this way. Supposing we had had a case of insider trade, and somebody brought in 14 people on Wall Street to say this is the practice of the industries, it's been done for years. Is that relevant to the defense? (N.T. July 21, 1987, at p. 95).

We find this analogy totally spurious. Insider trading is a crime *per se*, but failure to pay back a loan is only criminal if the individual debtor had the requisite fraudulent intent. Without this fraudulent intent, the alleged failure to repay is a matter for the civil, not the criminal courts. Indeed this evidence was offered to prove that Appellant's intent was not criminal, that the nature of the "evangelical business" was such that this conduct was not criminal conduct.[3]

---

**3.** The court remarked to counsel at sidebar, "you are attempting to use this evidence to show that this guy [Rev. Atwood] did not commit any crimes." (N.T. July 21, 1987 at p. 94). As the defense points out, this remark was an inadvertent admission by the court that this evidence was probative of criminal or fraudulent intent.

The trial court upheld the admissibility of "lifestyle" testimony, and evidence of Appellant's failure to repay loans to Ms. Nickell and Ms. Sorozak, even when no charges were filed against Appellant regarding these loans, on the basis that the criminal intent which must be proved in order to establish Theft by Deception is often difficult to prove directly. We affirmed the trial court noting that the Commonwealth must often rely on circumstantial evidence of words or conduct to prove the requisite intent. *Commonwealth v. Bentley, supra.* In all fairness, the trial court may not not grant a certain amount of latitude to the Commonwealth in order that it might establish by inference the element of intent or motive, and then deny that same latitude to the defense.

We therefore dismiss Appellant's conviction of perjury as to Count Ten of the information. As to all other counts we remand for a new trial in accordance with this opinion. Jurisdiction relinquished.

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting.

I respectfully dissent, and would affirm all of the appellant's convictions.

The majority would overturn the appellant's conviction for perjury before the grand jury[1] because the evidence was insufficient, in that "it cannot be said that the Commonwealth has sustained its burden of proving beyond a reasonable doubt that appellant knew his answer to be false." I do not agree.

The Commonwealth presented testimony from the victim, Anna Gates, that Atwood had asked for a loan to buy television time. The victim's son, Alan Gates, testified that Anna Gates had loaned money to the appellant. One Eugene Kennett testified that the appellant had promised to repay the money advanced by the victim. Finally, Jay Altland testified that he was aware that appellant had

---

1. Count 10 of the criminal information.

borrowed money from Mrs. Gates and that the appellant had no intention of repaying it.

We must sustain the conviction, when viewing the evidence in the light most favorable to the Commonwealth, as the verdict winner, and drawing all reasonable inferences favorable therefrom, the evidence is sufficient to find every element of the crime shown beyond a reasonable doubt. *Commonwealth v. Griscavage*, 512 Pa. 540, 517 A.2d 1256 (1986).

Perjury is defined by statute as follows:

A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement, when the statement is material and he does not believe it to be true.

18 Pa.C.S.A. § 4902(a).

The appellant was under oath before a grand jury, and he stated that he thought the monies were a gift, and not a loan. The Commonwealth placed several witnesses on the stand who testified that the opposite was true, and that the appellant was aware of it. The loan-gift distinction clearly was material to the investigations. All the elements of the crime, therefore, were satisfied by the evidence of record. My colleagues place undue emphasis on a statement supposedly made to an investigator from the Attorney General's office by the victim that "she would not mind if he didn't repay her as long as he continued to do the Lord's work." At the very most, this created an issue of credibility for the finder of fact to rule upon. The finder of fact ruled against the appellant on this issue. The statement does not, in my opinion, mandate a reversal of the perjury conviction.

My colleagues also would grant the appellant a new trial based upon the exclusion of the testimony of other "evangelical ministers" that their business practices often consisted of precisely what activities resulted in appellant's convictions-not paying loans when due, floating debts by borrowing from others and then using that borrowed money to pay

initial lenders, and running up expensive bills financed by this fiscal manipulation. This testimony was properly excluded by the lower court as irrelevant. The issue before that court was whether the appellant had committed the crimes with which he was charged, not whether the other "evangelical ministers" were also committing the crime as well or were engaged in loose financial practices. I would not grant a new trial, but would affirm the judgment of sentence.